UNITED STATES of America ex rel.
Paul O'CONNOR, Petitioner,

v.

Neal MacDONALD, Warden, etc., et
al., Respondents.

No. 77 C 1831.

United States District Court,
N. D. Illinois, E. D.

March 30, 1978.

Paul O'Connor, pro se.

Thomas M. Hoidal, Chicago, Ill., for petitioner.

Melbourne Noel, Jr., Asst. Atty. Gen., Chicago, Ill., for respondent.

#### Memorandum

LEIGHTON, District Judge.

This is an application for a writ of habeas corpus in which it is alleged that petitioner was deprived of due process and equal protection of the laws when he was denied parole by the Illinois Parole and Pardon Board. Federal jurisdiction is invoked pursuant to 28 U.S.C. § 2254; and the cause is before the court on cross motions for summary judgment. The issue presented is whether the undisputed facts of this case establish that petitioner is entitled to federal habeas corpus relief.

## I.

On August 28, 1974, petitioner and a co-defendant pled guilty to a charge that they had raped a young woman in an apartment the two were burglarizing. The burglary count was dismissed, and they were sentenced to identical terms of 4–12 years. Petitioner received credit for 9 days he spent in jail awaiting trial, his co-defendant for 41. As a result of this difference in jail time credit, the co-defendant became eligible for parole one month before petitioner. At the time of their parole hearings, both were inmates in the same institution.

When petitioner's co-defendant appeared before the two-member Parole Board's subcommittee that considered him for parole, the only information available concerning the offense for which he had been sentenced was a statement prepared by the responsible prosecuting attorney in compliance with Illinois law, Ill.Rev.Stat. ch. 38, § 1005–4–1(c), (d)(5) (1973). This statement was in duplicate, one copy for petitioner, the other for the co-defendant. It stated that "[o]n July 9, 1974, at approximately 3:30 a. m. the defendants [petitioner and his co-defendant] unlawfully entered the apartment of Jill Barnes, who is 18 years of age. Her apartment was located at 1107 N. Hickory Street, in Joliet, Illinois. At the time she was asleep and both defendants grabbed her, tied her hands with bedsheets and placed a knife at her throat. During a 45 minute period, both defendants forcibly had sexual intercourse with her against her will, and prior to leaving removed a sterio [sic] set and $40. Miss Barnes never saw either of the defendants before that time."

Petitioner's co-defendant was questioned by the subcommittee. In his answers, he said that he had once done "one year federal probation" for mail theft; that during his incarceration, he had taken college courses, and had obtained a drafting certificate from the Illinois Valley Community College. He said that he had obtained about 29 college credits, and had earned a general education degree at another institu-

tion. At the time of his interview, he was vice-president of "the Jaycees" at the institution where he was incarcerated. He explained why he had been sent to that particular one: it was because of his unwillingness to get involved in gang activities. As to his plans for the future, he said he wanted to go to an alcohol half-way house " * * * because I have a drug and alcohol background * * *." He was questioned about his involvement in the offense that led to his conviction and disclaimed an ability to recall the details. After considering his case, the subcommittee made a recommendation, and the Parole Board granted the co-defendant parole, saying "[t]he board feels that with close supervision; participation in an alcoholic [sic] anonymous program, you'll be able to abide by the rules governing parole."

A little more than a month later, petitioner appeared before another two-member Board subcommittee, one member having been on the subcommittee that gave his co-defendant a favorable recommendation for parole. As to the offense that led to his conviction, as had been the case of his co-defendant, the only information available was the similarly worded statement prepared by the responsible prosecuting attorney. When petitioner was questioned, he disclosed that as a juvenile he had two misdemeanor offenses; but he had never been in trouble with the law as an adult. He said he had never been incarcerated in any juvenile facility; and as to the offense that led to his imprisonment, he was out of work, needed some money and " * * * my rap partner suggested that we go up and pull a burglary and we did and the situation went down [sic]"; that "it was just a freak happening that someone was there, and that's about it." He said that at the time of the offense, he was under the influence of drugs and had been drinking "most of the day."

When asked whose idea was it to commit the burglary and rape the young woman, he replied that "[i]t was kind of a combination. He started, I stopped. I woke her up and left the room and I came back and he was in there talking to her, and he produced a knife and I told her, I said 'Don't get upset because he is crazy,' and he is. That was the situation." Then, without being asked, he added: "[t]he girl that was there was not supposed to be there. See I knew the people that—I knew the girl that had rented the apartment, and she was gone. When we came by her car was gone, so we anticipated that nobody was home. Like I say, that was the circumstances [sic]."

From what petitioner said, his institutional record was a good one. A member of the subcommittee read a letter from the Dean of Student Development congratulating petitioner for his academic grade point average of 4.0 which qualified him for the fall semester Dean's List. For this he was complimented by both members. After further discussion concerning his family which he said consisted of his wife who was ill and a four-year-old child, he was informed that his case would be considered, and a decision reached would be sent to him later that evening. The subcommittee deliberated and reached the following conclusion, read into the record by the member who had voted in the earlier subcommittee to give the co-defendant parole.

"This is a minimum case. The inmate is serving four to 12 years for rape. The most interesting part about this case is that his rap partner, who was also serving four to 12 years for rape was paroled on the minimum a month ago, and this panel, with some concerns about paroling the inmate due to the seriousness of the offense, is reluctant to parole this one on the minimum.

While his program participation has been above average, the staff prognosis for parole success is rated as fair to good, with the recommendation that he disassociate himself from his rap partner if he is paroled.

He states that he has a job earning $4.55 a hour in Oak Park working from the hours of 7:00 p. m. to 3:00 a. m. He has also participated in the A.A. Program her [sic] and states that he didn't feel he needed a drug abuse program, because he was not addicted. There is a very strong

letter from the State's Attorney's Office. There is also an indication that he applied for Work Release, and he states that he was turned down on several occasions. However, his rappee was approved for Work Release and he filed a grievance and was again turned down for the program. This gives some credence to the possibility that he was the main instigator in this particular crime. Although, they both got the same sentence.

He stated that he knew the woman that rented the apartment and felt that she was not at home, and did not know that this other woman was going to be there when they went to rob the place.

His wife appeared on his behalf and made an urgent plea for his need at home, followed by his mother, who also established the need for him at home.

The Board feels that he should be gradually released to the community, and that the Work Release Program is a better way for him to go out, rather than by out-and-out parole. With that in mind the Board is recommending the staff evaluate him for the Work Release Program. Parole is denied, continued to the September, 1977 Docket."

Based on this conclusion, the Parole Board denied petitioner parole, saying that "[t]he seriousness of the offense precludes favorable recommendation at this time, but due to your positive attempts to rehabilitate yourself through the programs of the institution, the Board believes that Work Release is a better way for you to be released, and is recommending that staff evaluate you for that program." [1]

## II.

On these facts, petitioner contends that in denying him parole because of the seriousness of his offense, the Board's action was based on an impermissible reason and was thus arbitrary and capricious; that its

identification of him as the main instigator of the offense for which he and his co-defendant were convicted was without evidentiary support, and thus an arbitrary and capricious conclusion; and that granting parole to his co-defendant while denying him the same consideration, when he was a better candidate, was discriminatory action by the Board, an agency of the State of Illinois. Therefore, he insists that in denying him parole, the Board deprived him of due process of law and equal protection of the laws in violation of the Fourteenth Amendment to the constitution of the United States.

In furnishing the information required of an applicant for federal habeas corpus relief, petitioner disclosed that the grounds he advances in this application have never been presented to a state court. For this reason, respondents immediately filed a motion to dismiss this petition on the ground that petitioner has failed to exhaust state remedies available to him. They argue that since he is seeking release from an Illinois incarceration through parole, the Illinois Habeas Corpus Act, Ill.Rev.Stat. ch. 65, § 22(2) (1975), provides him with a remedy because under its terms a state prisoner " * * * can be discharged * * * where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge." Ill.Rev.Stat. ch. 65, § 22(2) (1975).

Before petitioner answered this motion, respondents filed an addendum to their supporting memorandum and moved for summary judgment, attaching thereto a verbatim stenographic report of the parole hearings that had been given petitioner and his co-defendant. A short time later, petitioner filed a cross motion for summary judgment supported by a memorandum in which he opposed respondents' motion to dismiss

---

1. During the pendency of these proceedings petitioner was given another parole hearing, and on August 10, 1977 was again denied parole. The Board explained its decision, saying, "The Board still feels that a supervised work release program would be the best way to ob-

serve your adjustment in the free community. This program would enable you to continue your education. The Board would also recommend that you become involved in counseling that will enable you to develop insight into your own personality."

and their motion for summary judgment. As to the motion to dismiss, he argues that in applying to this court for federal habeas corpus relief, he is not seeking discharge from Illinois custody; the parole he was unconstitutionally denied by the Illinois Parole Board was not " * * * some act, omission or event * * * " within the meaning of the Illinois Habeas Corpus Act, thus entitling him to discharge. As to respondents' motion for summary judgment, petitioner concedes there is no issue of material fact between the parties; but he argues that summary judgment should be entered in his favor because it plainly appears that when the Parole Board denied him parole, its action was arbitrary and capricious since the reason given was seriousness of the offense; that the Board's determinations lacked evidence to support them; and the distinction the Board made between petitioner and his co-defendant was a discriminatory one, thus depriving him of due process and equal protection of the laws in violation of the federal constitution. For these reasons, petitioner argues that the judgment to be entered in his favor should be a writ of habeas corpus ordering respondents to release him from custody on parole.

### III.

#### A.

There is no merit to respondents' contention that petitioner did not exhaust available state remedies before seeking habeas corpus relief in this court. He does not claim being " * * * entitled to his discharge" as this expression is used in section 22 of the Illinois Habeas Corpus Act. He seeks parole which he claims was unconstitutionally denied him. Parole is not discharge. *People ex rel. Johnson v. Pate*, 47 Ill.2d 172, 265 N.E.2d 144 (1970). It is a form of custody whereby the prisoner leaves his place of incarceration while remaining in the legal custody and control of a parole board until termination of his sentence. *Jones v. Cunningham*, 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Bricker v. Michigan Parole Board*, 405 F.Supp. 1340, 1343 (E.D.Mich.1975). Therefore, in a case like this one, where a parole hearing has been granted but parole denied on grounds claimed to be arbitrary, capricious, and unconstitutional, there is no known remedy to which an Illinois prisoner can resort before applying to a federal court for relief. For these reasons, it cannot be said that petitioner failed to exhaust available state remedies before he filed this federal habeas corpus petition.[2]

#### B.

As to the substance of this controversy, it appears indisputable that petitioner and his co-defendant were charged with the same offenses, pled guilty on the same day, and were given the same sentence by the same judge. However, because the co-defendant had more jail time credit, he was entitled to parole consideration a month or so earlier than petitioner. The official statement concerning their offenses was identically worded. Because of this fact, the Parole Board subcommittee could not tell the particular part each offender had in the crimes, or their relative culpability.

When the co-defendant appeared before the Board subcommittee, he was questioned about the offenses and his involvement in them. Apparently, the answers he gave were satisfactory. As a result, he was

---

**2.** The question whether in a particular case an Illinois prisoner has an available post-conviction remedy is an old and troublesome one. See *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947); compare *United States ex rel. Williams v. Brantley*, 502 F.2d 1383 (7th Cir. 1974). For a case like the one at bar, sections 1003–3–1 *et seq.* of the Uniform Code of Corrections which govern Parole Board rulings, do not provide for judicial review. Moreover, it is fair to say that Illinois courts display an unwillingness to make state remedies available to prisoners. See, e. g., *Long v. Israel*, 56 Ill.App.3d 14, 13 Ill.Dec. 781, 371 N.E.2d 873 (1977). Whether common law certiorari, a well known Illinois procedure, see *Goodfriend v. Board of Appeals of Cook County*, 18 Ill.App.3d 412, 305 N.E.2d 404 (1973), is available to a prisoner like petitioner, is a subject that has not attracted the attention of legal scholars, practicing lawyers, or Illinois judges.

granted parole. When petitioner appeared before another subcommittee, a member of which had heard and voted to recommend parole for the co-defendant, he gave answers about the crimes which disclosed that of the two, he knew the apartment they were going to burglarize, knew about the scene of the crimes, suggesting to the subcommittee that he, petitioner, was the main instigator of the crimes, certainly very serious ones. Therefore, because of the seriousness of the offenses, petitioner was denied parole. It may be, as he argues, that the subcommittee was mistaken, indeed wrong, in deciding that he was the main instigator of the offenses committed by him and his co-defendant.

 This, however, did not make the decision arbitrary and capricious. The decision of a state administrative agency is an arbitrary one when it is made without fair, solid, and substantial cause or reason; but it is not necessarily so because mistaken or even wrong. See *Grossmann v. Barney*, 359 S.W.2d 475, 476 (Tex.Civ.App.1962); compare *Urmston v. City of North College Hill*, 114 Ohio App. 213, 175 N.E.2d 203, 206 (1961); *Milwaukie Company of Jehovah's Witnesses v. Mullen*, 214 Or. 281, 330 P.2d 5, 12 (1958), *appeal dismissed*, 359 U.S. 436, 79 S.Ct. 940, 3 L.Ed.2d 932 (1959). The Board gave a reason for the conclusion it reached: the seriousness of petitioner's offense. This was adequate for the minimum requirements of due process. See *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *Garcia v. United States Board of Parole*, 557 F.2d 100 (7th Cir. 1977); see also *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated on other grounds*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). Of course, the Board's action is subject to judicial review in order to determine whether it has followed the appropriate criteria, rational and consistent with the applicable statutes, and that its decision is not arbitrary and capricious nor based on impermissible considerations. See *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976); compare *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, a district court cannot substitute its judgment on questions of parole for that of a parole board; therefore, the scope of judicial review is very limited. *Zannino v. Arnold*, 531 F.2d at 691.

The court has made this limited review. And accordingly, it concludes that the Board gave a reason for its decision denying petitioner parole; that there was an evidentiary basis for the Board's reason, even though the Board was perhaps mistaken or wrong; and that the Board's action was not arbitrary or capricious. Nothing in the record of petitioner's treatment by respondents suggests application of any deliberate or unjustifiable standard by which he was subjected to intentional discrimination. See *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970); *Sturm v. California Adult Authority*, 395 F.2d 446 (9th Cir. 1967), *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 466 (1969); *Williams v. Field*, 416 F.2d 483 (9th Cir. 1969), *cert. denied*, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970); *Murphy v. Wheaton*, 381 F.Supp. 1252 (N.D.Ill.1974). Thus, the facts of this case do not establish that petitioner is entitled to habeas corpus relief in this court.

Therefore, respondents' motion for summary judgment is granted, and petitioner's is denied. Judgment will be entered for respondents, and this petition dismissed. See *Garcia v. United States Board of Parole*, 557 F.2d 100 (7th Cir. 1977); *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975); compare *Cruz v. Skelton*, 543 F.2d 86 (5th Cir. 1976).