1 P.3d 768

Terry M. TURNER, Appellant–Appellant,

v.

The HAWAI'I PAROLING AUTHORITY, Appellee–Appellee.

No. 22231.

Intermediate Court of Appeals of Hawai'i.

May 2, 2000.

As Amended May 9, 2000.

Terry M. Turner, on the briefs, appellant-appellant pro se.

Heidi M. Rian and George K.K. Kaeo, Jr., Deputy Attorneys General, State of Hawai'i, on the briefs, for appellee-appellee.

BURNS, C.J., ACOBA, and LIM, JJ.

Opinion of the Court by ACOBA, J.

We hold that a prison parole hearing is not a contested case hearing subject to judicial review under the Hawai'i Administrative Procedures Act (the HAPA), chapter 91 of the Hawai'i Revised Statutes (HRS). Accordingly, Appellant–Appellant Terry M. Turner (Appellant), a prison inmate, was not entitled to appeal under HRS § 91–14 (1993) [1] from the denial by Appellee–Appellee

---

1. Hawai'i Revised Statutes (HRS) § 91–14 (1993) states in relevant part as follows:

**Judicial review of contested cases.** (a) *Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the* nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to

Hawai'i Paroling Authority (HPA or the HPA) of his parole request. We therefore affirm the January 8, 1999 judgment of the first circuit court (the court) which dismissed his appeal on jurisdictional grounds.

However, we conclude that the requirement imposed as part of the Hawai'i Sex Offender Treatment Program (the HSOTP) that a "sex offender" inmate admit to commission of a sexual assault and complete a mandatory treatment program as a precondition to parole implicates a liberty interest under the due process clause in article I, section 5 of the Hawai'i Constitution. Appellant's contention that he has been subjected to such a requirement, but is not a sex offender, raises a colorable claim that his continued prison confinement is illegal. Such a claim is entitled to be heard under Hawai'i Rules of Penal Procedure (HRPP) Rule 40, which incorporates *inter alia* remedies afforded by the writ of habeas corpus.

## I.

■ On August 13, 1996, Appellant appealed to the court pursuant to HRS § 91–14 of the HAPA,[2] from the August 8, 1996 HPA decision denying him parole. According to

Appellant, the HPA's decision was based on his failure to admit to a sex crime. In his appeal to the court, Appellant argued that he was "not required to admit to a sex crime to be paroled" because he was "before the [HPA] only on a first degree [t]erroristic [t]hreatenting charge[.]"

On November 25, 1996, Appellant filed a Motion for Appointment of Counsel, in which he "request[ed the] court to appoint counsel for him ... because he [could not] afford to pay for counsel." On March 6, 1997, an order was filed by the court denying this motion.[3]

On January 24, 1997, the HPA filed a non-hearing Motion to Dismiss for Lack of Jurisdiction in Lieu of Certification and Transmission of [Agency] Record. In its attached supporting memorandum, the HPA argued that Appellant's appeal should be dismissed because "this [c]ourt does not have jurisdiction to entertain an agency appeal from a decision of the [HPA.]" The HPA contended that "[f]or an agency appeal to be properly before this [c]ourt, a right to appeal the agency decision must be provided by statute" and "there is no statutory authority for an agency appeal" in the present case.[4]

---

other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. . . .

. . . .

(g) Upon review of the record the [circuit court or supreme court, where a statute provides for direct appeal,] may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Emphasis added).

2. The Hawai'i Administrative Procedures Act (HAPA), promulgated in HRS chapter 91, sets

forth the "procedural requirement[s] in the adoption and promulgation of administrative codes or rules and regulations," *East Diamond Head Ass'n v. Zoning Bd. of Appeals of City and County of Honolulu,* 52 Haw. 518, 525, 479 P.2d 796, 800 (1971) (Kabutan, dissenting), and provides that "'any person aggrieved by a final decision and order [of an agency] in a contested case' [may] seek judicial review from the agency's final decisions and order." *Curtis v. Board of Appeals, County of Hawai'i,* 90 Hawai'i 384, 393–94, 978 P.2d 822, 831–32 (1999). In *Price v. Zoning Bd. of Appeals of City and County of Honolulu,* 77 Hawai'i 168, 171, 883 P.2d 629, 632 (1994), the Hawai'i Supreme Court acknowledged that "[j]udicial review of contested cases is governed by the [HAPA.]"

3. The stated grounds for the denial were that "there [was] an insufficient basis for the request for appointment of counsel, failure to notice all interested parties, and the motion fails to comply with the notice requirements under the Hawai'i Rules of Civil Procedure and the Rules of Circuit Courts[.]"

4. Appellee–Appellee Hawai'i Paroling Authority (the HPA) failed to cite any authority for these contentions.

On February 5, 1997, Appellant filed a motion for extension of time to respond to the HPA's motion arguing he had limited access to the law library. According to the court minutes of March 1, 1997, Appellant's motion was denied because the motion was "moot." [5]

On March 3, 1997, Appellant filed his answer to the HPA's motion, asserting that the motion to dismiss was without merit. Appellant contended that he had a right to appeal because (1) the HPA failed to follow its rules and prejudiced his substantial rights; (2) he was an aggrieved party in a contested case proceeding; (3) "the court has subject matter jurisdiction over appeals brought from actions of administrative agencies[;]" and (4) standing to appeal "is not conditioned upon formal intervention in the agency proceeding[,]" or "[l]ack of service of a certified copy of the notice of appeal on every other party to the proceedings[,]" or upon "agency approval before an interlocutory appeal may be taken from a ruling of such agency."

On August 17, 1998, the court filed an order granting the HPA's motion and dismissed the agency appeal with prejudice because "it lack[ed] jurisdiction to hear an appeal based on [HRS] chapter 91, ... of a decision issued by the [HPA,]" such "[d]ecisions ... are not contested cases as defined by section 91–1(5), ... and hearings conducted by the [HPA] are not agency hearings as defined by section 91–1(6)[.]"

Thereafter, on August 28, 1998, Appellant filed a notice of appeal from the court's order. On November 5, 1998, the Hawai'i Supreme Court dismissed the appeal "for want of appellate jurisdiction" because inter alia, "judgment has not been entered on the circuit court's August 17, 1998 order[.]" On January 8, 1999, an appropriate judgment and a notice of judgment were entered in the court. On January 14, 1999, a subsequent notice of appeal was filed by Appellant "from the judgment entered on January 8, 1999."

## II.

■ Whether the circuit court has subject matter jurisdiction under HRS chapter 91 to hear a prison inmate's appeal from the denial of parole by the HPA presents a question of law. Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), aff'd, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) ("A trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable de novo."). We must determine, then, whether HRS chapter 91 applies to HPA parole hearings.

## III.

### A.

The HPA is an administrative agency established under HRS chapter 353 (1993). Its members are appointed by the governor of the State of Hawai'i (the State), and for administrative purposes, the HPA is part of the Department of Public Safety. HRS §§ 353–61 and 26–14 (1993).

Parole may be defined as the "[c]onditional release from imprisonment which entitles a parolee to serve the remainder of his [or her] term outside the confines of an institution, if he [or she] satisfactorily complies with all terms and conditions provided in the parole order." Black's Law Dictionary 1116 (6th ed.1990) (citations omitted). HRS § 706–670.5 (1993) defines a "prisoner" or "parolee" as "a person who has been convicted of an offense[.]"

According to HRS § 706–670 (1993), a prisoner is entitled to a "parole hearing." HRS § 706–670(1) states that "[a] person sentenced to an indeterminate term of imprisonment shall receive an initial parole hearing at least one month before the expiration of the minimum term of imprisonment determined by the [HPA]...." In the event parole is denied at the initial hearing, "additional hearings shall be held at twelve-month intervals or less until parole is granted or the maximum period of imprisonment expires." Id.

■ At the hearings, "[t]he State shall have the right to be represented ... by the prosecuting attorney, who may present writ-

---

5. No reason can be found in the record for this determination although it appears the court ap-

parently approved and ordered a two-week extension.

ten testimony and make oral comments, and the [HPA] shall consider the testimony and comments in reaching its decision." *Id.* Testimony at these hearings may be given by victims, witnesses, and other interested parties. *Barnett v. State*, 91 Hawai'i 20, 33, 979 P.2d 1046, 1059 (1999) (stating that "the legislature intended to allow witnesses to make oral comments as part of the prosecution's oral presentation"). In addition to receiving "reasonable notice of the ... parole hearing[,]" a prisoner shall receive "reasonable aid ... in preparation of a parole plan[,]" including representation by counsel. HRS § 706–670(3).[6] The parole hearing must be recorded and the reasons for denying parole must be in writing. HRS § 706–670(4). The HPA, "as a condition of parole, may impose reasonable conditions on the prisoner as provided under section 706–624."[7] HRS § 706–670(2).

Under HRS § 353–65, the "[f]ull power ... to grant, and to revoke paroles is conferred upon the [HPA]." Among its other responsibilities and duties, the HPA selects individuals for parole, establishes the conditions of parole, and supervises individuals on parole. HRS § 353–62. The HPA must consider all committed persons for parole except those sentenced to life without parole, HRS § 353–62(2); "[d]etermine the time at which parole shall be granted ... as that time at which maximum benefits of the correctional institutions to the individual have been reached and the element of risk to the community is minimal[,]" HRS § 353–62(3); and "[e]stablish rules ... to determine conditions of parole applicable to any individual granted parole." HRS § 353–62(4).

In granting or denying parole, the statutory standard to be applied by the HPA is that

"[n]o parole shall be granted unless it appears to the [HPA] that there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society." HRS § 353–69. The HPA may suspend or revoke a prisoner's parole "in the event ... the prisoner breaks the prisoner's parole or violates any law of the State or rule of the paroling authority or any of the terms or conditions of the prisoner's parole[;]" however, the prisoner is entitled to notice and an opportunity to be heard prior to such a suspension or revocation. HRS § 353–66.

■ Under the foregoing provisions, it is evident the HPA has broad statutory discretion in determining whether to grant or deny parole to inmates and to set conditions therefor.

### B.

Pursuant to HRS § 353–65, the legislature also invested the HPA with the power to establish rules and regulations "under which any prisoner may be paroled but shall remain, while on parole, in the legal custody and under the control of the paroling authority[.]" Such rules and regulations must be established pursuant to HRS chapter 91 (1993) and if thus adopted, have the force and effect of law. HRS § 353–62(9)(b)(3).

The HPA has established such rules in Hawai'i Administrative Rules (HAR) §§ 23–700–31 to –37 (1992). In determining parole eligibility, the HPA conducts a parole hearing no later than thirty days prior to the expiration of the inmate's longest minimum term of imprisonment. HAR § 23–700–31. The inmate must receive notice of this hear-

6. HRS § 706–670 (1993) provides in relevant part as follows:

    **Parole procedure; release on parole; terms of parole, recommitment, and reparole; final unconditional release**....

    ...

    (3) Prisoner's plan and participation.... [T]he prisoner shall:

    (a) Be permitted to consult with any persons whose assistance the prisoner reasonably desires, including the prisoner's own legal counsel, in preparing for a hearing before the authority;

    (b) Be permitted to be represented and assisted by counsel at the hearing;

    (c) Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; and

    (d) Be informed of the prisoner's rights as set forth in this subsection.

7. HRS § 706–624 (1993) lists the "mandatory" and "discretionary" conditions which may be imposed in a sentence of probation.

ing at least seven days prior to the hearing and as required by HRS § 706–670(3), may be represented by counsel.[8] Also as allowed by HRS § 706–670(1), the State may be represented at the hearing by a prosecuting attorney.

Under HAR § 23–700–33, the HPA uses the following guidelines in determining whether an inmate is eligible for parole:

Parole shall not be granted unless it appears to the [HPA] that there is a reasonable probability that the inmate concerned will live and remain at liberty without violating the law and that the inmate's release is not incompatible with the welfare and safety of society. *Parole is not a right of an inmate or parolee. Parole may be denied to an inmate when the [HPA] finds:*

(a) The inmate does not have a viable parole plan;

(b) The inmate has been a management or security problem in prison as evidenced by the inmate's misconduct record;

(c) The inmate has refused to participate in recommended prison programs;

(d) The inmate's behavior in prison is a continuation of the behavior that led to the inmate's imprisonment;

(e) The inmate has a pending prison misconduct;

(f) The inmate does not have the ability or commitment to comply with conditions of parole;

(g) The inmate has pending criminal charges which arose from [the] inmate's current incarceration or last parole;

(h) The inmate has a parole plan for a state that has not accepted the inmate for supervision; or

(i) The inmate has expressed little or no interest in parole.

HAR § 23–700–33 (emphasis added).

The precise statutory or rule basis for denial of Appellant's parole is not evident from the record.

## IV.

### A.

An aggrieved party is entitled to judicial review of "a[n administrative agency's] final decision and order in a contested case[.]" HRS § 91–14(a). " 'Contested case' means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91–1(5). At a contested case hearing, "the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion." HRS § 91–10(4) and (5). "Every party [in a contested case] shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence." HRS § 91–10(3).

The HPA is an "agency" fitting the definition of "each state or county board, commission, department, or officer authorized by law to make rules." But in the context of parole hearings, we conclude it does not "adjudicate contested cases" because an HPA parole proceeding is not a "contested case" as defined under HRS chapter 91.

### B.

Other courts have held that parole decisions are not reviewable under provisions like those in chapter 91. In *Smith v. Missouri State Bd. of Probation & Parole*, 743 S.W.2d 123 (Mo.App.1988), the inmate peti-

---

**8.** The notice also informs the inmate of his or her rights, which include

(1) Consult[ing] with any persons the inmate reasonably desires;

(2) Representation and assistance by counsel at the parole hearing;

(3) Hav[ing] counsel appointed to represent and assist the inmate if the inmate so requests and cannot afford to retain counsel;

(4) Be[ing] heard and [able] to present any relevant information;

(5) Assistance from a parole officer in preparing a parole plan and in securing information for presentation to the [HPA.]

Hawai'i Administrative Rules § 23–700–32(b).

tioned for judicial review of the parole board's denial of parole. *Id.* at 123–24. Similar to HRS § 91–14, Missouri Revised Statutes (Mo.Rev.Stat.) § 536.100 provided that "[a]ny person ... aggrieved by a final decision in a contested case, ... shall be entitled to judicial review thereof." *Id.* at 124. The petition was summarily dismissed by the circuit court and an appeal followed. *Id.* Identical to HRS § 91–1(5), Mo.Rev.Stat. § 536.010(2) defined "contested case" as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." *Id.* In affirming dismissal, the Missouri appellate court concluded that "[t]he element of adversity is essential to the meaning of 'contested case.'" *Id.* It reasoned that a parole hearing was not a "contested case" because "the relationship between the inmate and the [parole board] is supervisory in nature, not adversarial." *Id.* at 125. According to the court of appeals, a supervisory relationship existed because in determining parole eligibility, the parole board "review[ed] all available and pertinent reports and materials; review[ed] the inmate's institutional adjustment, conduct and progress; and evaluate[d] the inmate as a person." *Id.*

In *Shields v. Department of Corrections,* 128 Mich.App. 380, 340 N.W.2d 95 (1983), the inmate filed a complaint for judicial review of the parole board's decision denying him parole. *Id.* at 96. The circuit court dismissed the complaint for lack of subject matter jurisdiction. The inmate appealed, contending that the "decision of the parole board ... is reviewable as a 'contested case' under the Administrative Procedures Act." *Id.* at 96–97. Like HRS chapter 91, the Michigan Administrative Procedures Act provides that "[w]hen a person ... is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law." *Id.* at 97 (citing Michigan Compiled Laws § 24). The Michigan Court of Appeals held that the parole board's decision was not reviewable as a "contested case" under the Act.[9] *Id.*

Similarly, in *State v. Dalton,* 831 S.W.2d 942 (Mo.App.1992), the Missouri Court of Appeals held that proceedings before the parole board were not "contested cases" subject to review under its administrative procedures act. *Id.* at 943. The Missouri definition of "contested case" under Mo.Rev.Stat. § 536.01.(2) is similar to that of HRS § 91–1(5), and states that a "contested case" is "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined." *Id.* The court of appeals noted that "[s]ome procedural indicia of the adversarial nature of a 'contested case' are a hearing, required notice to all necessary parties, the use of only sworn testimony, the parties' right to call and examine witnesses and to cross-examine opposing witnesses, and evidentiary rules." *Id.* at 944 (citations omitted). According to that court, "an adversary hearing is a contest of opponents favoring divergent results in the decision to be made by the agency" and "the element of adversarial parties is essential to the definition of a 'contested case[.]'" *Id.* (citations omitted).

Because "several essential indicia of an adversary hearing ... [were] missing," *id.,* the court of appeals decided a parole board proceeding was not a "contested case" subject to judicial review. For instance, in light of the rules and regulations governing the parole board, the court of appeals pointed out that the board hearing was more analogous to an "interview" because the "'evidence' relied upon by the [parole board] is neither sworn testimony nor testimony tested by cross[-]examination." *Id.* (citing 14 Missouri Code of State Regulations 80–2.010(1)(A), (3)

---

9. In arriving at its decision, the Michigan Court of Appeals quoted Michigan Compiled Laws § 791.234(5), which states that "'[t]he time of a person's release on parole ... shall be discretionary with the parole board. The action of the parole board in releasing prisoners shall not be reviewable if in compliance with law.'" *Shields v. Department of Corrections,* 128 Mich.App. 380, 340 N.W.2d 95, 97 (1983). The court of appeals concluded that Michigan Compiled Laws § 791.234(5) "expressly exempts the parole board's decision on whether to consider a prisoner for parole from judicial review, so long as the decision is made in compliance with" the applicable law. *Id.*

and (7)). The appellate court noted that "the [b]oard still must determine whether a parole would be in the best interest of society. Thus, [the board's] relationship to the offender is 'supervisory in nature, not adversarial.'" *Id.* (quoting *Smith,* 743 S.W.2d at 125).

## C.

■ Like the foregoing jurisdictions, we believe a parole hearing lacks the attributes of a contested case hearing. The HPA hearings are not adversarial proceedings. There is no right to cross-examine witnesses. No burden of producing evidence or burden of persuasion is placed upon any specific participant. There is no right to submit rebuttal evidence. The participants merely have the opportunity to present testimony and comments. HRS § 706–670; HAR § 23–700–32(d); *see also Barnett,* 91 Hawai'i at 32–33, 979 P.2d at 1058–59. Reliance is not placed on testimony which is subject to cross-examination. *See Dalton,* 831 S.W.2d at 944. While an inmate may choose to be represented by counsel at the parole hearing, *see supra* note 6, the lack of adversarial indicia makes a parole hearing more akin to an interview than a contested case. *Id.*

Additionally, the relationship between the "opposing" parties may not necessarily be adversarial. Although it has a right to be represented by the prosecuting attorney, the State is not an essential party to a parole hearing. It is conceivable that on occasion, all the relevant participants may favor the granting of parole rather than "favoring divergent results in the decision to be made by the agency." *See id.*

Furthermore, the relationship between an inmate and the HPA is more supervisory in nature than adversarial. *See Smith,* 743 S.W.2d at 125; *Dalton,* 831 S.W.2d at 944. There is no *per se* "legal right" to parole. *See* HAR § 23–700–33 ("Parole is not a right of an inmate or parolee."). Under HRS § 353–62(a)(5), the HPA "[p]rovide[s] continuing custody, control, and supervision of paroled individuals" and any prisoner who is paroled "remain[s], while on parole, in the legal custody and under the control of the paroling authority." HRS § 353–65. Because the parolee remains in the legal custody of the HPA while on parole, the supervisory power exercised during parole appears to be a continuation of the supervisory relationship which existed when the parolee was imprisoned.

■ For the foregoing reasons, we conclude parole hearings are not contested cases as defined in HRS chapter 91.

## V.

In its answering brief, the HPA suggests that HRPP Rule 40(a)(2) provides a means by which an inmate can petition the court for release from custody and thereby obtain review of a parole denial.

HRPP Rule 40 concerns post-conviction proceedings and provides in relevant part as follows:

(a) *Proceedings and Grounds.* The *post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus* [ [10] ] and

---

10. Under HRS chapter 660 (1993), writs of habeas corpus may be issued by the court when a person is "unlawfully restrained of [his or her] liberty[.]" HRS § 660–3; *see also* HRS § 660–5. In *State v. Nakata,* 76 Hawai'i 360, 878 P.2d 699, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995), the Hawai'i Supreme Court indicated that "[t]he kind of custody that will suffice [for habeas corpus purposes] is judged by a very liberal standard[.]" *Id.* at 372, 878 P.2d at 711 (citing 17A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4262, at 305 (1988)).

HRS § 660–3 provides that

[t]he supreme court, the justices thereof, and the circuit courts may issue writs of habeas

corpus in cases in which persons are unlawfully restrained of their liberty; provided that persons committed or detained by order of the family court or under chapter 334 may, and if the jurisdiction of the family court is exclusive, shall, prosecute their applications in the family court.

HRS § 660–5, which concerns the requirements to be set forth in a complaint seeking a writ of habeas corpus, states in relevant part:

Application for the writ or an order to show cause shall be made to the court or judge authorized to issue the same, by complaint in writing, signed by the party for whose relief it is intended, or by some person in his behalf, setting forth:

coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and *to custody based on judgments of conviction,* as follows:

. . .

(2) *From Custody.* Any person *may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:*

. . .

(iii) *any other ground making the custody, though not the judgment, illegal.*

(3) *Inapplicability.* Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.

(Emphases added).

As set forth above, a post-conviction proceeding under HRPP Rule 40(a) "encompass[es] all common law and statutory procedures ... including habeas corpus." The drafters of the 1975 Proposed Draft of the HRPP indicated that the reference to the writ of habeas corpus in HRPP Rule 40 was "intended to make clear that any post-conviction remedy which is available under this rule will require a resort to this rule in place of habeas corpus, coram nobis or any other vehicle, thus achieving the objective of a primary unitary proceeding for the various post-conviction challenges listed in this rule."

(1) The person by whom, and the place where, the party is imprisoned or restrained, ...;
(2) The cause or pretense of imprisonment or restraint, according to the knowledge and belief of the applicant;
. . .

Commentary to Proposed Haw. R. Penal Proc. (1975) Rule 40, at 205 (citing ABA Standard 1.1). The drafters explained that the absorption of other remedies is limited to those having the "same purpose", so that other writs and remedies are not abolished under this rule but may be used in circumstances where this rule is not applicable. *The intent here is to subordinate the various writs to the primary remedy afforded by this rule and allowing a resort to them only when and if the primary remedy is unavailing or inadequate.*

*Id.* (emphasis added). It is plain that Appellant is in "custody based on a judgment of conviction." HRPP Rule 40(a)(2). Hence, giving effect to "the objective of a primary unitary proceeding" and "subordinat[ing] the various writs to the primary remedy," we believe a HRPP Rule 40 proceeding is available to Appellant if his claim could be the subject of a petition for habeas corpus.

### VI.

■ In that regard we believe, as other jurisdictions have held, that a writ of habeas corpus is the proper means to challenge a denial of parole. *See Neal v. Shimoda,* 131 F.3d 818 (9th Cir.1997) (recognizing that " 'habeas corpus is the exclusive remedy for a State prisoner who challenges the fact or duration of his [or her] confinement and seeks immediate or speedier release' ") (quoting *Heck v. Humphrey,* 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (citations omitted)); *Butterfield v. Bail,* 120 F.3d 1023, 1024 (9th Cir.1997) ("If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under [U.S.C.] § 1983.")

For example, in *Stillwell v. State,* 124 Idaho 366, 859 P.2d 964 (App.1993), *cert. denied, Stillwell v. Idaho,* 511 U.S. 1056, 114 S.Ct. 1619, 128 L.Ed.2d 345 (1994), the defendant appealed from a trial court order dismissing

(4) That there has been no determination of the legality of the detention on a prior application ..., or, if there has been a previous determination, the new grounds[.] The facts alleged shall be verified by the oath of some credible person[.]

his application for post-conviction relief following the denial of probation. *Id.* at 968. The defendant argued that there was no rational state purpose for the commission's discriminatory "policy of either denying parole for sex offenders or requiring them to serve a longer part of their indeterminate sentences than other prisoners must serve before parole is granted." *Id.*

The Court of Appeals of Idaho refused to address the merits of the defendant's claim because the defendant was not yet eligible for parole. *Id.* at 969. However, it opined that "[t]he appropriate method for challenging an unlawful confinement, including confinement following a denial of parole, is a petition for a writ of habeas corpus, which is exempt from the time constraints of post-conviction petitions." *Id.* (citing *Olds v. State,* 122 Idaho 976, 842 P.2d 312, 315 (App. 1992)); *see also Weaver v. Pennsylvania Bd. of Probation and Parole,* 688 A.2d 766, 771 (Pa.1997) (concluding that "three possible state proceedings that a prisoner could pursue to challenge a denial of parole [are] (1) an appeal from a decision of the Board denying an application for parole on unconstitutional grounds; (2) *a petition for writ of habeas corpus;* and (3) an action in mandamus against the Board") (emphasis added).

In *United States ex rel. O'Connor v. Mac-Donald,* 449 F.Supp. 291 (Ill.1978), the United States district court concluded that denial of parole may entitle a prisoner to federal habeas corpus relief. *Id.* at 295. In that case, the district court noted that Illinois did not afford any state remedies by which a prisoner could challenge the constitutionality of a parole denial. *Id.* Determining that the prisoner's habeas petition was properly before it, *id.,* the district court ruled that the petitioner was not entitled to habeas corpus relief because the denial of parole was not arbitrary, capricious, or unconstitutional. *Id.* at 296.

In *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1962), the United States Supreme Court reviewed a habeas corpus petition brought by a prisoner paroled by the Virginia Parole Board. *Id.* at 236. The Supreme Court granted certiorari to determine whether the petitioner was "in

custody" and "therefore entitled to invoke the habeas corpus jurisdiction of the United States District Court." *Id.* at 236–38. In deciding that the parole order placed the petitioner "in the 'custody and control' of the Parole Board[,]" *id.* at 238, the Supreme Court noted that "[i]n England, as in the United States, the chief use of habeas corpus has been to seek the release of persons held in actual, *physical custody* in prison or jail." *Id.* (emphasis added).

■ We conclude, then, that because a denial of parole continues physical custody, such denial is a proper subject of a writ of habeas corpus and, therefore, an inmate denied parole may be entitled to relief through the mechanism of a HRPP Rule 40 petition.

## VII.

■ While Appellant may seek habeas corpus relief under HRPP Rule 40, judicial review of a parole board's decision denying parole is a very narrow one, confined essentially to violations of a prisoner's constitutional rights.

In *MacDonald,* the state prisoner who was denied parole alleged that he was deprived of due process and equal protection by the parole board's decision. *MacDonald,* 449 F.Supp. at 292. Declaring that "a district court cannot substitute its judgment on questions of parole for that of the parole board[,]" *id.,* the United States district court limited its review to situations where "[t]he decision of a state administrative agency is an arbitrary one when it is made without fair, solid, and substantial cause or reason; but it is not necessarily so because mistaken or even wrong." *Id.* (citing *Grossmann v. Barney,* 359 S.W.2d 475, 476 (Tex.Civ.App.1962); *cf. Urmston v. City of North College Hill,* 114 Ohio App. 213, 175 N.E.2d 203, 206 (1961); *Milwaukie Co. of Jehovah's Witnesses v. Mullen,* 214 Or. 281, 330 P.2d 5, 12 (1958)) (some citations omitted). The district court indicated review would be exercised "to determine whether [the parole board] has followed the appropriate criteria, rational and consistent with the applicable statutes and that its decision is not arbitrary and capricious nor based on impermissible consider-

ations." *Id.* (citing *Zannino v. Arnold,* 531 F.2d 687, 690 (3d Cir.1976); *cf. Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Likewise, in *Reider v. Commonwealth of Pennsylvania Bd. of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), the Pennsylvania Court of Appeals held that a decision by the parole board denying parole was subject to limited judicial review. *Id.* at 972. Noting that denials of parole are "wholly a matter of the [parole board's] discretion[,]" *id.* at 970 (citing 61 Pennsylvania Consolidated Statutes § 331.21), the appellate court explained that it would be "impossible for a court to properly evaluate" a parole denial because of the many variables considered by the board, such as "record facts, personal observations and the experience of the decision maker which leads to a 'predictive judgment' as to what is best for both the inmate and the community." *Id.* at 971. The court recognized that judicial review of

> a Board order denying a parole application is limited to a determination of whether the Board failed to exercise any discretion at all, whether the Board arbitrarily and capriciously abused its discretion so as to amount to a violation of a constitutional right, and whether or not the procedure utilized by the Board violated any constitutional rights of the prisoner.

*Id.* at 969–70 (citations omitted); *but see Hanrahan v. Williams,* 174 Ill.2d 268, 220 Ill.Dec. 339, 673 N.E.2d 251, 255–57 (1996), *cert. denied,* 522 U.S. 812, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997) (holding that the parole board has "complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute" and "the merits of parole-release decisions are not subject to judicial review").

■ Because a parole board has broad discretion in determining whether to grant or deny parole, judicial review of its decisions in this area is limited. In our view, the courts may examine a decision denying parole in situations where the parole board has failed to exercise any discretion at all, or "arbitrarily and capriciously abused its discretion" so as to give rise to a due process violation or has otherwise violated any constitutional rights of the prisoner. *See MacDonald,* 449 F.Supp. at 296; *Reider,* 514 A.2d at 969–70.

### VIII.

Because violation of a constitutional right may support the issuance of a writ of habeas corpus, we must determine whether the HSOTP requirements for parole eligibility implicate any such right. We believe that they can.

In *Neal,* the appellants, A.J. Neal (Neal) and Marshall Martinez (Martinez), brought 42 U.S.C.A. § 1983 actions, which were consolidated on appeal.[11] Neal had been indicted in 1990 for robbery, kidnapping, sexual assault, terroristic threatening, and attempted murder, but pursuant to a plea agreement entered in 1993, the sexual offense charges were dismissed in exchange for his plea of guilty to the other charges. *Neal,* 131 F.3d at 822. Martinez had been convicted of kidnapping and attempted rape in 1984. *Id.* at 823.

On appeal, the appellants challenged the requirements of the HSOTP, one of which compelled an inmate to admit to committing a sexual offense as a precondition to parole. *Id.* at 821–22. Both appellants argued that the sex offender classification and requirement of completing the program "implicate[d] a liberty interest subject to the protections of due process[.]" *Id.* The United States Ninth Circuit Court of Appeals concluded that a sex offender classification, together with the mandatory conditions of the HSOTP as preconditions for parole eligibility, implicated a due process liberty interest entitling a prisoner to a classification hearing. *Id.* at 831.

---

11. 42 U.S.C.A. § 1983, concerning civil actions for the deprivation of rights, provides in part that [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The court of appeals first acknowledged that " '[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.' " *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). It pointed out that the United States Supreme Court had discerned a Fourteenth Amendment [12] liberty interest in

> "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*"

*Id.* at 827–28 (emphasis added) (quoting *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citations omitted)). Reasoning that the "stigmatizing consequences of being labeled a sex offender ... [was an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" *id.* at 828–29 (citations omitted), the ninth circuit concluded that before being classified as sex offenders under the HSOTP, the appellants were entitled to certain protections under the fourteenth amendment's due process clause:

> [T]he stigmatizing consequences of the attachment of the "sex offender" label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections. Inmates like Neal and Martinez are entitled to the benefits of these procedures before being labeled as sex offenders and subjected to the requirements of the SOTP.

*Id.* at 830.

In examining the process due to appellants, the court of appeals first found that " 'the right to some kind of prior hearing is paramount.' " *Id.* (quoting *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701). It cited *Wolff* as having held that "advance written notice of the claimed violation" and "a written statement by the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken" were the "two elements ... essential 'if the minimum requirements of due process are to be satisfied' " for a protected liberty interest. *Id.* at 830 (quoting *Wolff,* 418 U.S. at 563, 94 S.Ct. 2963). Further, the ninth circuit found *Wolff* required that an inmate " 'should be allowed to call witnesses and present documentary evidence in his [or her] defense[.]' " *Id.* (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963).

Hence, before an inmate may be classified as a sex offender under the HSOTP, the inmate "is entitled to an advance statement of the reasons for that classification" and "to a hearing at which he [or she] must be allowed to call witnesses and present documentary evidence in his [or her] defense." *Id.* at 831 n. 14.

Because a prior adversarial proceeding satisfies the due process entitlement to a hearing, the court of appeals decided that "[a]n inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process." *Id.* at 831. As a result, it held that Martinez had "received all of the process to which he was due [because] Martinez was convicted after formal criminal proceedings of attempted rape, obviously a sex offense." *Id.* However, it concluded that Neal "did *not* receive the minimum due process requirements ... [because he] *ha[d] never been convicted of a sex offense and ha[d] never had an opportunity to formally challenge the imposition of the 'sex offender' label in an adversarial setting.*" *Id.* (first emphasis in original; second emphasis added).

**12.** The fourteenth amendment to the United States Constitution provides in relevant part:
> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

### IX.

We also hold that the conditions for eligibility of parole under the HSOTP, which includes an admission to a sexual offense, implicate a protected liberty interest under the due process clause in article I, section 5 of the Hawai'i Constitution. Similar to the fourteenth amendment to the United States Constitution, article I, section 5 of the Hawai'i Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law[.]" But while "the due process clause of the Hawai'i Constitution is modeled after the fourteenth amendment to the United States Constitution, the due process protection under our state constitution is not necessarily limited to that provided by the United States Constitution." *State v. Bernades,* 71 Haw. 485, 487, 795 P.2d 842, 843 (1990) (citations omitted); *see also State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971) ("The protection afforded by this section is not necessarily limited to that provided by the fourteenth amendment.").

This court has recognized that prisoners " 'do retain the procedural due process right not to be deprived of a liberty interest without reasonable notice and a meaningful opportunity to be heard'[, but that they] . . . 'retain only a narrow range of protected liberty interests . . . dependant upon the particular situation being examined.'" *Wilder v. Tanouye,* 7 Haw.App. 247, 255, 753 P.2d 816, 822 (1988) (quoting *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)).

We conclude, as stated in Appellant's August 12, 1996 notice of appeal, that the HPA's alleged decision to deny Appellant's application for parole on the ground of his refusal "to admit to a sex crime" implicated such a liberty interest under the Hawai'i Constitution. Although prisoners enjoy only a "narrow range of protected liberty interests[,]" *Wilder,* 7 Haw.App. at 255, 753 P.2d at 822, it appears that "the stigmatizing consequences" of the "sex offender" label and "the subjection of [a] targeted inmate to a mandatory treatment program" as a "precondition for parole eligibility" requires due process protections. *Neal,* 131 F.3d at 830. Since the Hawai'i Constitution may provide greater protections than that afforded under the United States Constitution, we hold that the due process clause of the Hawai'i Constitution provides an independent basis for the due process right to a sex offender classification hearing before such requirements may be imposed.[13] Of course such a hearing is not mandated if an inmate has already received the process due that inmate by virtue of a sexual assault conviction stemming from a prior trial or plea agreement. *See id.* at 831.

### X.

#### A.

In *State v. Allen,* 7 Haw.App. 89, 744 P.2d 789 (1987), this court concluded generally that a post conviction HRPP Rule 40 proceeding is appropriate where the "petition states a colorable claim[.]" *Id.* at 92, 744 P.2d at 792 (citing *State v. Schrock,* 149 Ariz. 433, 719 P.2d 1049, 1057 (1986)); *see also Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (holding that the general rule is that a trial court must hold an evidentiary hearing on a HRPP Rule 40 petition for post-conviction relief whenever the petition states a colorable claim for relief). While *Allen* involved a challenge to a judgment, we believe the general rule it adopted would apply where the challenge is to the illegality of the custody following a judgment. *Allen,* 7 Haw. App. at 92, 744 P.2d at 792; *see also Dan,* 76 Hawai'i at 427, 879 P.2d at 532. In *Allen,* this court further noted that "[w]here [on appellate review] examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing." *Allen,* 7 Haw.App. at 92, 744 P.2d at 792–93 (citing *Widermyre v. State,* 452 P.2d 885 (Alaska 1969)).

Accordingly, Appellant must establish a "colorable claim" that the alleged pro-

---

13. The necessity of an "adversarial" hearing arises out of similar due process requirements identified by the Ninth Circuit in *Neal.* However, such requirements are not coterminous with those set out for contested case hearings in HRS chapter 91 or parole board hearings set out in HRS chapters 706 or 353. *See* text *supra.*

longed physical custody resulting from denial of his parole request was illegal.[14] It is not evident from the record whether Appellant has had the "opportunity to formally challenge the imposition of the 'sex offender' label in an adversarial setting" or has "been convicted of a sex offense." *Neal*, 131 F.3d at 831. "Minimum due process" would appear to require that it be demonstrated Appellant was validly designated "a sex offender" so as to be subjected to the HSOTP conditions for parole. *See id.*[15] As previously recounted, Appellant argues that because he was "before the [HPA] only on a first degree [t]erroristic [t]hreatening charge[,]" he was "not required to admit to a sex crime to be paroled." *See State v. Naone*, 92 Hawai'i 289, 301–05, 990 P.2d 1171, 1186–87 (1999) (holding that HSOTP requirements may be imposed as a valid condition of a deferred acceptance of a no contest plea or probation). If Appellant was not afforded an adversarial sex offender classification hearing or properly classified as a "sex offender,"[16] denial of parole solely for his failure to make the purported required admission may be arbitrary and capricious and, thus, violative of due process.

### B.

In order to determine whether a petition for HRPP Rule 40 post-conviction relief warrants a hearing, Appellant must demonstrate that the alleged facts in the petition "if proven would entitle the petitioner to relief[.]" HRPP Rule 40(f). Accepting Appellant's allegation that he was convicted only of terroristic threatening as true, the HPA's purported denial of parole may be improper under the conditions discussed *supra* and, thus, his petition is sufficient to establish a "colorable claim" requiring a HRPP Rule 40 hearing. The fact that Appellant did not file a petition styled as a HRPP Rule 40 claim does not preclude his entitlement to relief because HRPP Rule 40(c)(2) provides for consideration of nonconforming petitions.[17] Under the circumstances, we conclude that Appellant's allegations are sufficient to support a HRPP Rule 40 post-conviction hearing.

### XI.

For the foregoing reasons, we affirm the court's January 8, 1999 judgment which dis-

14. Technically, if granted parole, Appellant–Appellant Terry M. Turner (Appellant) would remain in the *legal* custody of the HPA. Parole "is a form of custody whereby the prisoner leaves his place of incarceration while remaining in the legal custody and control of a parole board until termination of his sentence." *United States ex rel. O'Connor v. MacDonald*, 449 F.Supp. 291, 295 (N.D.Ill.1978). Appellant's request for habeas relief obviously is from physical custody. *See Jones v. Cunningham*, 371 U.S. 236, 238, 83 S.Ct. 373, 9 L.Ed.2d 285 (1962) (stating that "the chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail").

15. In *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), the Ninth Circuit Court of Appeals, in discussing the Hawai'i Sex Offender Treatment Program, stated that "under the [program], a 'sex offender' is defined as someone having been convicted, at any time, of any sex offense or [who] engaged in sexual misconduct during the course of an offense." *Id.* at 822. The ninth circuit did not address the latter alternate definition of "sex offender."

It is not clear how "sex offender" was defined by the HPA in Appellant's case and whether its definition included something less than a conviction for sexual assault. These and other ques-

tions are best resolved in a Rule 40 hearing which we instruct be held on remand. *See infra* text.

16. *See, supra* note 15.

17. HRPP Rule 40(c)(1) and (2) states:

(1) *In General.* The petition shall be in substantially the form annexed to these rules....

(2) *Nonconforming Petition.* Where a post-conviction petition deviates from the form annexed to these rules, it shall nevertheless be accepted for filing and shall be treated as a petition under this rule provided that the petition *(i) claims* illegality of a judgment or *illegality of "custody" or "restraint" arising out of a judgment*, (ii) is accompanied by the necessary filing fee or by a well-founded motion for waiver of the filing fee or request to proceed in forma pauperis, and (iii) meets minimum standards of legibility and regularity.

When treating a nonconforming petition as a petition under this rule, the *court shall promptly clarify by written order that the requirements of this rule apply and, if the information in the petition is incomplete, may require the petitioner to file a supplemental petition in the form annexed to these rules before requiring the state to respond.*

(Emphases added.)

missed Appellant's agency appeal. We also (1) remand Appellant's petition to the court to oversee compliance under HRPP Rule 40(c)(2), (2) instruct that the petition be re-filed as a HRPP Rule 40 petition, and (3) order that the matter be set for hearing before an appropriate court. We recommend on remand that counsel be appointed to represent Appellant in the HRPP Rule 40 proceeding and that in connection with the de-termination of Appellant's conviction(s), the pertinent prosecuting attorney's office be no-tified.[18]

18. HRPP Rule 40(i), concerning indigents, pro-vides that

[i]f the petition alleges that the petitioner is unable to pay the costs of the proceedings or to afford counsel, the court shall refer the petition to the public defender for representation as in other penal cases; provided that no such refer-ral need be made if the petitioner's claim is patently frivolous and without trace of support either in the record or from other evidence submitted by the petitioner.

*See Engstrom v. Naauao,* 51 Haw. 318, 321, 459 P.2d 376, 378 (1969) (holding that appointment of counsel for indigent post conviction hearing is proper "if the petition raises substantial issues which require marshalling of evidence and logi-cal presentation of contentions").