**Electronically Filed
Supreme Court
SCWC-16-0000532
22-OCT-2021
09:44 AM
Dkt. 19 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

RICHARD RAPOZO, Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAI'I, Respondent/Respondent-Appellee.

_____

SCWC-16-0000532

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000532; CASE NO. 1PR141000016)

OCTOBER 22, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

Richard Rapozo ("Rapozo") appeals pro se from the Circuit

Court of the First Circuit's ("circuit court")[1] denial of his

_____

[1] The Honorable Richard K. Perkins presided over the eighth HRPP Rule 40 petition at issue in this certiorari proceeding.

eighth Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 (2006) petition for post-conviction relief.

Rapozo was convicted of murder by a jury on April 10, 1979. On May 16, 1979, the trial court sentenced Rapozo to life imprisonment with the possibility of parole and ordered restitution "in the amount of $11,109.33, the manner of payment to be determined and handled by the Department of Social Services and Housing."  In an October 18, 1979 "Notice and Order Fixing Minimum Term(s) of Imprisonment," the Hawai'i Paroling Authority ("HPA") set Rapozo's minimum sentence at thirty years, with the condition that "[p]arole shall not be granted until judg[]ment of restitution is satisfied" ("minimum term order"). The HPA denied Rapozo's parole requests from 2006 through 2013 on the grounds it was not convinced Rapozo could substantially comply with the terms and conditions of parole, without stating why it was not convinced, and recommended that Rapozo participate in various programs.

Liberally construed,[2] in summary, Rapozo argued in his eighth HRPP Rule 40 petition that (1) the trial court erred by ordering restitution without first determining whether Rapozo could afford to pay it; (2) the trial court erred by delegating

---

[2]    See Villaver v. Sylva, 145 Hawai'i 29, 36, 445 P.3d 701, 708 (2019) ("A fundamental tenet of Hawai'i law is that pleadings prepared by pro se litigants should be interpreted liberally" (cleaned up)).

payment of restitution to the Department of Social Services and Housing ("DSSH"); and (3) the HPA erred by denying him parole for nonpayment of restitution. The circuit court denied the eighth HRPP Rule 40 petition without a hearing on June 21, 2016.

The Intermediate Court of Appeals ("ICA") affirmed. The ICA declined to address Rapozo's argument on appeal that the trial court erred by ordering restitution without determining Rapozo's ability to pay on the grounds Rapozo had not raised the issue before the trial court in the eighth HRPP Rule 40 petition. The ICA also ruled that State v. Johnson, 68 Haw. 292, 297, 711 P.2d 1295, 1299 (1985), which held that "[w]ithout express legislative authority, the court cannot delegate the sentencing function to another person or entity," did not retroactively apply to Rapozo's sentence.

In summary, we hold that Rapozo stated a colorable claim that the HPA denied parole due to nonpayment of restitution due to the condition in the minimum term order. We also hold that Johnson clarified an existing legal principle, and therefore did not create a "new rule." Thus, Rapozo raised colorable claims in his eighth HRPP Rule 40 petition.

Hence, we vacate the ICA's April 5, 2021 judgment on appeal and the circuit court's June 21, 2016 order denying the eighth HRPP Rule 40 petition, and we remand this case to the circuit court for further proceedings consistent with this opinion.

## II.  Background

### A.  Factual background

The ICA opinion on Rapozo's direct appeal sets out the factual background of the murder conviction:

> On the evening of August 15, 1978, appellant [Rapozo] was at the Waimanalo Gym.  He purchased a pistol outside the Gym and tucked it in his pants.  He consumed some beer during the course of the evening.  A girls' volleyball game was in progress in the Gym and appellant had been in the Gym playing with the girls for about an hour when he allegedly became obnoxious and was asked to leave.  As he walked away, he was confronted by one Robert Lee, whom he had never met.  Lee was fatally wounded by the first bullet fired from appellant's gun which struck him in the stomach.  After Lee had fallen, the appellant shot him two more times.  On the question of whether the appellant drew his gun and shot Lee the first time or whether the first shot resulted from Lee's attempt to seize the gun and the resulting struggle, the evidence was conflicting.

State v. Rapozo (Rapozo I), 1 Haw. App. 255, 257, 617 P.2d 1235, 1236 (1980).

### 1.  Indictment and sentence

On August 23, 1978, a grand jury indicted Rapozo for murder in violation of Hawai'i Revised Statutes ("HRS") § 707-701.[3]  On April 10, 1979, a jury convicted Rapozo of the charged offense.

On May 16, 1979, the trial court filed its judgment sentencing Rapozo to life imprisonment with the possibility of

---

[3]     HRS § 707-701 (1976) provided:

> **§ 707-701 Murder.**  (1) Except as provided in section 707-702, a person commits the offense of murder if [the person] intentionally or knowingly causes the death of another person.
> (2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706-606.

parole.  The trial court also ordered "restitution in the amount of $11,109.33, the manner of payment to be determined and handled by the Department of Social Services and Housing."

The HPA's October 18, 1979 minimum term order set Rapozo's minimum sentence at thirty years, with the condition that "[p]arole shall not be granted until judg[]ment of restitution is satisfied."[4]  (Emphasis added.)

## B.    Procedural background

Because HRPP Rule 40(a)(3)[5] prohibits relief when "the issues sought to be raised have been previously ruled upon or were waived," we summarize Rapozo's previous appeals and

---

[4]    At the time of sentencing, HRS § 706-669 (1976) stated in relevant part:

> (1) When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six months after commitment to the custody of the director of the department of social services and housing hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.

[5]    HRPP Rule 40(a)(3), which governs waiver of issues in HRPP Rule 40 proceedings, states:

> (3) Inapplicability.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

5

petitions.  We also summarize relevant proceedings before the HPA.

### 1.    Rapozo's direct appeal, previous petitions, and parole hearings

#### a.    Direct appeal

Rapozo appealed from the original judgment of conviction to the ICA, alleging ineffective assistance of counsel.[6]  Rapozo I, 1 Haw. App. at 257, 617 P.2d at 1236–37.  The ICA affirmed Rapozo's conviction, holding the record insufficient to establish ineffective assistance of counsel.  Id.

#### b.    First HRPP Rule 40 petition

On May 8, 1981, Rapozo filed his first HRPP Rule 40 petition, S.P. No. 5490, again alleging ineffective assistance of counsel.[7]  The circuit court denied the petition.  On appeal, this court affirmed, concluding Rapozo's ineffective assistance of counsel claim was meritless.  Rapozo v. State, No. 8573 (Haw. June 26, 1984) (mem.).

---

[6]    Specifically, Rapozo argued trial counsel should have made the defense of intoxication as precluding the state of mind required for murder the main thrust of the defense, rather than the defense of accident.  Rapozo I, 1 Haw. App. at 257, 617 P.2d at 1237.

[7]    Rapozo again argued ineffective assistance of counsel, contending (1) trial counsel did not adequately investigate his claim of intoxication and resulting diminished capacity, and thus failed to present that defense and improperly urged the defense of unintentional or accidental homicide, and (2) trial counsel coached him to give perjured testimony.

### c. First habeas corpus petition

On June 3, 1988, Rapozo filed a habeas corpus petition in the United States District Court for the District of Hawai'i ("district court") once again alleging ineffective assistance of counsel.[8] The district court dismissed the petition on December 18, 1991.

### d. Second HRPP Rule 40 petition

On August 13, 1993, Rapozo filed his second HRPP Rule 40 petition, S.P.P. No. 93-0048, alleging different grounds for relief.[9] The circuit court denied the petition without a hearing and Rapozo did not appeal.

### e. Reduction of Rapozo's minimum term sentence

On August 21, 1995, the HPA granted Rapozo's application to reduce his minimum term sentence from thirty years to twenty-eight years. His minimum term sentence therefore expired on August 10, 2006.

---

[8] Rapozo argued (1) ineffective assistance from both trial and appellate counsel because they failed to fully investigate a possible intoxication defense, (2) trial counsel counseled Rapozo on what to testify to at trial, thus causing Rapozo to commit perjury and neglect the intoxication issue, and (3) the trial court judge was biased against him because the same judge had convicted his brother of murdering a witness. See State v. Rapozo, No, 88-0414DAE (D. Haw. Nov. 1, 1991) (report and recommendation).

[9] Rapozo argued (1) the trial judge was biased against him, (2) the trial judge had a conflict of interest and therefore neglected to instruct for negligent homicide, (3) the police were negligent in their investigation, and (4) his trial counsel was rewarded for his conviction with a position as a judge.

### f. Third HRPP Rule 40 petition

On July 11, 1997, Rapozo filed his third HRPP Rule 40 petition, S.P.P. No. 97-0016, alleging ineffective assistance of counsel and several other grounds for relief.[10]  The circuit court denied the petition.  On appeal, the ICA summarily affirmed.  Rapozo v. State, 90 Hawai'i 502, 979 P.2d 98 (SDO) (App. Jan. 27, 1999).

### g. HRPP Rule 35 motion to correct sentence

On January 12, 1999, Rapozo filed a "Brief in Support of Motion to Correct Sentence" ("HRPP Rule 35 motion").[11]  The circuit court summarily denied the HRPP Rule 35 motion without a hearing.[12]  This court dismissed Rapozo's appeal after he failed

---

[10]   Rapozo argued (1) ineffective assistance of trial counsel because counsel failed to object and move for an in camera hearing, (2) the State misled the jury by withholding material evidence, and (3) he was denied the right to confront potential witnesses/statements.

[11]   Rapozo argued that HRS § 707-701 had been amended since the time of his sentence, and the crime of which he was convicted did not fall within the scope of the then-current version of HRS § 707-701 (1993), first degree murder.  He also argued his sentence should be corrected to reflect the term of imprisonment imposed by HRS § 706-656 (1993), the statute then governing the penalty for second degree murder, HRS § 707-701.5 (1993).

[12]   The circuit court rejected the motion because (1) it was untimely under HRPP Rule 35, and (2) HRS § 707-701.5 could not be retroactively applied.  As to the second basis, the circuit court, noting that HRS § 707-701 was amended and HRS § 707-701.5 (second degree murder) was added by 1986 Haw. Sess. Laws Act 314, § 50 at 616, stated:

> In essence, Rapozo asks this court to correct his sentence to reflect the sentence of an offense (Murder in the Second Degree) that did not exist at the time Rapozo was indicted, convicted and sentenced.  Rapozo's request presents the issue of whether this court can retroactively apply HRS § 707-701.5 (1993), which took effect on January 1, 1987, to correct Rapozo's sentence, which was imposed on May 16, 1979.

(continued. . .)

8

to file an opening brief.  See State v. Rapozo, No. 22327 (Haw. Sept. 9, 1999) (order).

### h.    Fourth HRPP Rule 40 petition

On January 5, 2006, Rapozo filed a request for "Revocation of Restitution Forms," which did not contain any arguments.  The circuit court construed the request as a non-conforming petition for post-conviction relief under HRPP Rule 40(c)(2)[13] and filed the request under S.P.P. No. 06-1-0040.  Because Rapozo did not

---

(. . .continued)

> HRS § 1-3 (1993) states that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended."  The general rule is that "[s]tatutes or regulations which say nothing about retroactive application are not applied retroactively if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions."  Clark v. Cassidy, 64 Haw. 74, 77, n.6, 636 P.2d 1344, 1346, n.6 (1981).  Because Act 314 took effect on January 1, 1987 and because HRS § 707-701.5 (1993) does not mention retroactive application, this court cannot correct Rapozo's sentence to conform with the provisions of HRS § 707-656 (1993), the sentence required by HRS § 707-701.5 (1993).
>
> On May 16, 1979, Rapozo was sentenced to life imprisonment with the possibility of parole.  This sentence was correct according to the law as it existed at that time.

(Alterations in original.)

[13]    HRPP Rule 40(c)(2) states:

> **(c)  Form and Content of Petition.**
>
> . . . .
>
> (2)  Nonconforming Petition.  Where a post-conviction petition deviates from the form annexed to these rules, it shall nevertheless be accepted for filing and shall be treated as a petition under this rule provided that the petition (i) claims illegality of a judgment or illegality of "custody" or "restraint" arising out of a judgment, (ii) is accompanied by the necessary filing fee or by a well-founded request to proceed without paying filing fees, and (iii) meets minimum standards of legibility and regularity.

supplement the non-conforming petition as required, the circuit court dismissed the petition.

### i.    2006 parole hearing

On October 23, 2006, the HPA denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo] could substantially comply with the terms and conditions of parole." The HPA recommended "[t]hat [Rapozo] participate in work furlough."  A rehearing was scheduled for July 2007.

### j.    2007 parole hearing

On July 24, 2007, the HPA again denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo] could substantially comply with the terms and conditions of parole." The HPA recommended "[t]hat [Rapozo] participate in all RAD recommended programs."[14]  A rehearing was scheduled for June 2008.

### k.    Fifth HRPP Rule 40 petition

On January 24, 2008, Rapozo filed his fifth HRPP Rule 40 petition, S.P.P. No. 08-1-0003, raising various grounds for relief.[15]  The circuit court denied the petition without a

---

[14]    The record does not reflect what the acronym RAD means.  However, according to Rapozo, "RAD" means "Reception Assessment & Diagnostics."

[15]    Rapozo argued (1) his First Amendment rights were violated by application of ex post facto laws, (2) the HPA and Department of Public Safety ("DPS") refused to release him after the expiration of what should have been his maximum term sentence, (3) he was falsely imprisoned, and (4) ex post facto law changes "were applied without notification of change or application."

hearing, and Rapozo appealed.  The ICA affirmed, holding that Rapozo was properly sentenced to life imprisonment with the possibility of parole and he was not being held beyond the expiration of his maximum sentence.  Rapozo v. State, No. 29771, 2010 WL 2565125, at *1 (App. June 28, 2010) (SDO).

### l.    2008 parole hearing

On June 26, 2008, the HPA again denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole." The HPA recommended "[t]hat [Rapozo] participate in all RAD recommended programs."  A rehearing was scheduled for May 2009.

### m.    2009 parole hearing

On May 20, 2009, the HPA once again denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole." The HPA recommended "[t]hat Rapozo participate in work furlough."  A rehearing was scheduled for April 2010.

### n.    Sixth HRPP Rule 40 petition

On May 26, 2009, Rapozo filed a "Petition for Writ of Habeas Corpus" in the circuit court.[16]  The circuit court treated the petition as a non-conforming petition for post-conviction relief and filed it under S.P.P. No. 09-1-0022.  Rapozo again

---

[16]    Rapozo argued he was illegally imprisoned because he was sentenced to a twenty-year imprisonment and ex post facto law changes were applied.

did not timely supplement the non-conforming petition with the required form, and the circuit court dismissed the petition.

### o.   2010 parole hearing

On April 22, 2010, the HPA denied Rapozo's parole request, stating: "REASON FOR DENIAL: Your participation in work furlough while incarcerated will significantly enhance your success on parole."  A rehearing was scheduled for January 2011.

### p.   Second habeas corpus petition

On August 30, 2010, Rapozo filed an "Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody" in the district court.[17]  The district court transferred the petition to the Ninth Circuit Court of Appeals on the grounds only the Ninth Circuit could authorize the district court to consider a second or successive petition for writ of habeas corpus.  The Ninth Circuit then denied authorization for a second habeas corpus petition.

### q.   2011 parole hearing

On March 28, 2011, the HPA denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole."

---

[17]   Rapozo argued (1) erroneous conviction and violation of the Fifth and Sixth Amendments to the United States Constitution, (2) violation of article 1, section 10 of the United States Constitution (ex post facto clause), (3) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and (4) illegal and improper detainment in violation of the Fourteenth Amendment to the United States Constitution.

The HPA recommended "[t]hat [Rapozo] participate in work furlough."  A rehearing was scheduled for February 2012.

### r.    Seventh HRPP Rule 40 petition

On January 10, 2012, Rapozo filed an HRPP Rule 40 petition that alleged fourteen points of error, initiating S.P.P. No. 12-1-0003.[18]  The circuit court dismissed the petition, finding:

> All fourteen grounds raised by Petitioner were in fact already raised and ruled upon either in Petitioner's direct appeal, or in one of his four prior Rule 40 Petitions cited above and their respective appeals.[19]  Even assuming, arguendo, that any of the fourteen grounds were not raised in Petitioner's prior Rule 40 Petitions or his direct appeal, they are deemed waived as Petitioner has failed to allege facts establishing the existence of extraordinary circumstances to justify the failure to raise them in the earlier proceedings.

The ICA dismissed Rapozo's appeal after Rapozo failed to file an opening brief.  Rapozo v. State, No. CAAP-12-0000544, 2013 WL 1490431 (App. Apr. 11, 2013) (order).

---

[18]    The fourteen points of error were: (1) application of ex post facto laws to his sentence; (2) violation of the ex post facto clause; (3) the State did not prove the elements of the charged offense beyond a reasonable doubt; (4) the State used perjured testimony; (5) vindictive prosecution; (6) error under Chapman v. California, 386 U.S. 18 (1967); (7) he was falsely charged with charges stemming from a riot at Halawa Correctional Center; (8) trial counsel's conflict of interest as he was rewarded for Rapozo's conviction with a position as a judge; (9) ineffective assistance of appellate counsel; (10) cruel and unusual punishment; (11) conviction on different issues and facts than what he was charged with; (12) "discriminatory enforcement of the law"; (13) he was held in prison because he was unable to pay restitution; and (14) ineffective assistance of trial counsel.

[19]    The circuit court took judicial notice of Rapozo I and the records and files in S.P.P. Nos. 5490 (the first HRPP Rule 40 petition), 93-0048 (the second HRPP Rule 40 petition), 97-0016 (the third HRPP Rule 40 petition), and 08-1-0003 (the fifth HRPP Rule 40 petition).

### s.    2012 parole hearing

On August 28, 2012, the HPA again denied Rapozo's parole request on the grounds it was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole." The HPA recommended "[t]hat [Rapozo] participate in all RAD recommended programs." A rehearing was scheduled for July 2013.

### t.    2013 parole hearing

On July 29, 2013, the HPA denied Rapozo's parole request, stating: "REASON FOR DENIAL: Your participation in work furlough while incarcerated will significantly enhance your success on parole." A rehearing was scheduled for June 2014.

### u.    Instant eighth HRPP Rule 40 petition and responses

On June 9, 2014, Rapozo filed "Defendant's Motion for Revocation of Restitution"[20] ("motion for revocation of restitution"). The circuit court construed the motion for revocation of restitution as a non-conforming petition for post-conviction relief and initiated S.P.P. No. 14-1-0016. On July 18, 2014, Rapozo filed a "Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody," which incorporated the motion. The July 18, 2014 petition is the

---

[20]    In a Motion for Assistance of Counsel, Rapozo also requested appointment of counsel to represent him on the allegedly colorable claims in his Motion for Revocation of Restitution.

14

eighth HRPP Rule 40 petition, the subject of this certiorari proceeding.

In his eighth HRPP Rule 40 petition, Rapozo raised the following general claims for relief. First, based on the 1979 minimum term order, Rapozo argued the HPA violated his constitutional rights by denying him parole due to nonpayment of restitution; he also argued that his restitution was in any event satisfied based on HRS §§ 706-644 (2014) and 706-645 (2014)[21] and therefore should be deemed "revoked." Second, Rapozo argued his sentence was illegal because (1) he was sentenced to an extended term of imprisonment when he received

---

[21]     HRS § 706-644 states in relevant part:

> (3) The term of imprisonment for nonpayment of fee, fine, or restitution shall be specified in the order of commitment, and shall not exceed one day for each $250 of the fee or fine, thirty days if the fee or fine was imposed upon conviction of a violation or a petty misdemeanor, or one year in any other case, whichever is the shorter period. A person committed for nonpayment of a fee or fine shall be given credit toward payment of the fee or fine for each day of imprisonment, at the rate of $250 per day.

At the time Rapozo was sentenced and convicted, HRS § 706-644 did not contain the word "restitution"; the legislature added the word "restitution" to the statute in 1986. See 1986 Haw. Sess. Laws Act 314, § 36 at 610-11. In 2021, the legislature amended the conversion rate in HRS § 706-644(3) from $25 to $250. See 2021 Haw. Sess. Laws Act 81, § 4.

HRS § 706-645 states in relevant part:

> (2) If it appears to the satisfaction of the court that the circumstances which warranted the imposition of the fine or restitution have changed, or that it would otherwise be unjust to require payment, the court may revoke the fine or restitution or the unpaid portion thereof in whole or in part. Prior to revocation, the court shall afford the prosecuting attorney an opportunity to be heard.

life imprisonment with the possibility of parole instead of a twenty-year imprisonment, (2) restitution was not an authorized sentence for murder under HRS §§ 706-605 (1978) and 706-606 (1976),[22] and (3) even if restitution was an authorized sentence for murder, the trial court could not delegate the determination of the manner of payment to the DSSH, citing to State v. Gaylord, 78 Hawai'i 127, 890 P.2d 1167 (1995).[23]

---

[22]     HRS § 706-605 stated in relevant part:

> (1) Except as provided in section 706-606 and subject to the applicable provisions of this Code, the court may suspend the imposition of sentence on a person who has been convicted of a crime, may order [that person] to be committed in lieu of sentence in accordance with section 706-607, or may sentence [that person] as follows:
>
> . . . .
>
> (e) To make restitution or reparation to the victim or victims of [the] crime in an amount [the defendant] can afford to pay, for loss or damage caused thereby in addition to paragraphs (a), (b), (c), or (d) above.

HRS § 706-606 stated in relevant part:

> The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:
>
> . . . .
>
> (b) Life imprisonment with possibility of parole or twenty years as the court determines, in all other cases. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

[23]     Rapozo also asserted that the HPA raised his minimum term sentence to thirty years without providing a reason; the record does not evidence this.

16

Attached to the motion for revocation of restitution were several documents, including an April 23, 2014 letter from then-HPA administrator Tommy Johnson ("Johnson") to Rapozo.  In relevant part, the letter stated:

> Secondly, your assertion that you are being held in custody as a result of not being able to pay the restitution ordered by the court is without merit and bo[]rders on being completely untrue.  There is absolutely no evidence to suggest that you were ever denied parole as a result of any issue regarding restitution ordered by the court.
>
> . . . .
>
> Finally, it is recommended that you continue to participate in facility programs, remain misconduct free, and participate in the Work Furlough programs as previously recommended.  Your next parole consideration hearing will take place during September 2014, as previously ordered by the parole board.

In response to the eighth HRPP Rule 40 petition, the State argued HRPP Rule 40(a)(3) precluded the issues raised because they were previously ruled upon or waived.[24]  The State, through the Attorney General ("AG"), argued in relevant part that (1) Rapozo's claims were waived and/or previously ruled upon, (2) Rapozo's claims that his constitutional rights were being violated should be dismissed or transferred because they did not allege illegal custody or restraint, and (3) there was no constitutional or statutory right to parole.

---

[24]    The State requested and received, over Rapozo's objection, two extensions of time to respond.  Attached to the second September 15, 2014 extension motion was a declaration that stated: "Declarant was recently informed of a policy change regarding restitution matters, an issue raised in the Petition, which could affect the State's response."  The State's answer did not mention any "policy change regarding restitution matters . . . ."

On April 29, 2016, the AG also filed a declaration from Johnson and additional documents in support of its answer to the eighth HRPP Rule 40 petition, which included the HPA's parole denials in 2014, 2015, and 2016.[25]  Johnson declared he was the HPA administrator from September 17, 2001, to June 12, 2007, when he became the Deputy Director of Correction for the DPS until December 6, 2010, when he returned to his HPA administrator position.  Johnson maintained that there was no evidence the HPA denied Rapozo's parole requests based on unpaid restitution, notwithstanding the language in the 1979 HPA minimum term order; that despite Rapozo's claim that he was a "model prisoner" and had "no misconduct for years," Rapozo had violated various prison rules and policies from 1983 to 2014; that Rapozo had not participated in the recommended level II substance abuse treatment program; that the work furlough program is full at times and incarcerated people scheduled to participate in it have to wait to be transported back to Hawai'i; and that the DPS, not the HPA, controlled when and which inmates were transported from Arizona to Hawai'i.[26]

---

[25]    On June 26, 2014; March 30, 2015; and February 24, 2016, the HPA denied Rapozo's parole requests on the grounds it was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole."  The HPA recommended "[t]hat [Rapozo] participate in all RAD recommended programs."

[26]    Johnson also incorrectly stated that Rapozo was "serving a concurrent sentence for a federal offense at a federal prison when his minimum term

(continued. . .)

On June 21, 2016, the circuit court denied the eighth HRPP Rule 40 petition without a hearing.

The circuit court addressed Rapozo's argument that the trial court could not delegate the determination of the manner of payment of restitution to the DSSH. The circuit court indicated the premise set forth in Gaylord, that the trial court must enter findings of fact and conclusions of law that the manner of payment of restitution was reasonable and one the defendant could afford, which Rapozo relied on in his arguments, was based on Johnson. Noting Rapozo's conviction became final on or about November 15, 1980, the circuit court framed the issue as whether Johnson retroactively applied to Rapozo's sentence. The circuit court cited to State v. Gomes, 107 Hawai'i 308, 113 P.3d 184 (2005), as the "controlling precedent," in which this court applied the Teague v. Lane, 489 U.S. 288 (1989) framework to determine whether a new constitutional rule of criminal procedure applied on collateral review.[27]

---

(. . .continued)
expired . . . ." Rapozo was instead transferred to a federal prison after he was involved in a riot at the Halawa Correctional Facility.

[27] In Gomes, this court stated:

> In Teague v. Lane, the Supreme Court held that new constitutional rules of criminal procedure that had not been announced at the time the defendant's conviction became final cannot be applied retroactively on collateral review unless they fit within one of two narrow exceptions. These exceptions exist if a new rule (1) "places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) "requires the observance of those procedures that
>
> (continued. . .)

19

The circuit court applied the Teague framework to Rapozo's argument. The circuit court reasoned that at the time of Rapozo's conviction, there were no cases interpreting the language of HRS § 706-605(1)(e). The circuit court observed that until Johnson, there were no Hawaiʻi cases that had specifically interpreted the phrase "in an amount he can afford to pay" to include the manner of payment. The circuit court concluded that, therefore, Johnson's prohibition on delegating the manner of payment of restitution was a "new rule" created after Rapozo's conviction. The circuit court also concluded that, because neither of the Teague exceptions applied, Johnson did not retroactively apply to Rapozo's sentence.

The circuit court also concluded: (1) Rapozo's challenges to the 2006 through 2011 HPA parole denials were previously ruled upon or waived;[28] (2) Rapozo's argument that he had been denied parole due to nonpayment of restitution was meritless, patently frivolous, and without a trace of support in the

_____

(. . .continued)
> . . . are implicit in the concept of ordered liberty."
> Thus, in order to apply the rule of Apprendi retroactively, we must determine that Apprendi is a new rule of criminal procedure that fits into one of Teague's exceptions.

107 Hawaiʻi at 313, 113 P.3d at 189 (ellipsis in original) (quoting United States v. Sanchez-Cervantes, 282 F.3d 664, 667 (9th Cir. 2002)).

[28] The circuit court ruled the 2006 and 2007 HPA parole denials were previously raised and ruled upon in Rapozo's 2008 HRPP Rule 40 proceeding; and the 2008 through 2011 HPA parole denials were waived because Rapozo could have raised those issues in his 2009 and/or 2012 HRPP Rule 40 petitions but failed to do so, and he failed to prove the existence of extraordinary circumstances justifying his failure to do so.

record;[29] (3) Rapozo's argument that he was held in custody since 2006 for nonpayment of restitution was meritless, patently frivolous, and without a trace of support in the record;[30] (4) Rapozo's challenge to his extended term sentence had been raised and ruled upon in his prior HRPP Rule 40 petitions and to the extent any portion of that issue was not raised and ruled upon, it was meritless, patently frivolous, and without a trace of support in the record; and (5) Rapozo's claim that restitution was not an authorized sentence for murder under HRS §§ 706-605 and 706-606 was meritless, patently frivolous, and without a trace of support in the record.

Rapozo appealed from the circuit court's order denying the eighth HRPP Rule 40 petition to the ICA.[31]

---

[29] The circuit court ruled the HPA denied parole in 2012 and 2014 through 2016 because (1) notwithstanding the 1979 HPA minimum term order, it was not convinced that Rapozo could substantially comply with the terms and conditions of parole; and (2) the HPA indicated the reason for the 2013 parole denial was that participation in work furlough while incarcerated would significantly enhance Rapozo's success on parole.

[30] The circuit court ruled that Rapozo's reliance on HRS § 706-644 was misplaced because the limitations on imprisonment for nonpayment and the conversion rate of $25 per day of imprisonment then set out in HRS § 706-644(3) plainly applied only to fees and fines. Further, the circuit court stated that even if Rapozo's default was not contumacious, he had not presented any evidence of a change in circumstances, or that requiring payment would be unjust, to revoke restitution.

[31] Rapozo had also initiated proceedings that resulted in: Rapozo v. State, No. 29047, 2008 WL 923291 (Haw. Mar. 24, 2008) (order); Rapozo v. Hawaiʻi, Case 1:08-cv-00191-HG-BMK (D. Haw. May 2, 2008) (order); Rapozo v. Perkins, No. 29667, 2009 WL 714308 (Haw. Mar. 13, 2009) (order); Rapozo v. Frank, No. 29718, 2009 WL 990850 (Haw. Apr. 9, 2009) (order); Rapozo v. State, No. 29949, 2009 WL 2477517 (Haw. Aug. 7, 2009) (order); Rapozo v. State, No. 30604, 2010 WL 2844082 (Haw. July 15, 2010) (order).

## 2.   ICA proceedings

On appeal, Rapozo raised fourteen points of error.[32]

The ICA rejected Rapozo's arguments and affirmed the circuit court's order denying the eighth HRPP Rule 40 petition. Rapozo v. State, CAAP-16-0000532, 2021 WL 945376 (App. Mar. 12, 2021) (mem.).  The ICA ruled that under the Teague framework, Johnson could not be retroactively applied, as Johnson had announced a new rule—five years after Rapozo's conviction and

---

[32]    The fourteen points of error were: (1) the trial court plainly erred by ordering Rapozo to pay restitution without first determining that he could afford to pay it, citing to State v. Murray, 63 Haw. 12, 621 P.2d 334 (1980), Johnson, 68 Haw. 292, 711 P.2d 1295 (1985), and Gaylord, 78 Hawai'i 127, 890 P.2d 1167 (1995); (2) the trial court erred by delegating payment of restitution to the DSSH; (3) the trial court erred by failing to address Rapozo's challenges to restitution brought under HRS § 706-645; (4) the circuit court erred by determining the "afford to pay" requirement was not available to Rapozo in 1979; (5) the HPA erred by disallowing Rapozo's possibility of parole for non-payment of a fee, fine, or restitution; (6) the HPA erred by repeatedly denying Rapozo parole because of "RAD recommendations," as the DPS never returned him to Hawai'i to complete the "Hawaii Program," which did not exist before his removal from Hawai'i; (7) the HPA erred by denying Rapozo parole repeatedly for his failure to complete the work furlough program when it was only available in Hawai'i, and he was never returned to Hawai'i; (8) the HPA erred by not returning Rapozo to Hawai'i to participate in the work furlough program for the reasons that "no room" existed on approximately forty plane flights to Hawai'i or that the program was "too full" to accommodate Rapozo; (9) the circuit court erred by allowing the AG to untimely respond to his petition; (10) the circuit court erred by not addressing Johnson's perjury in his sworn affidavit; (11) the trial court erred by sentencing Rapozo under HRS § 706-606(b), which allowed "arbitrary selection of multiple punishments without specific differentiating elements of legislative instruction depicting separation of higher and lower degrees of punishment"; (12) the trial court erred by determining Rapozo's maximum term sentence, and the HPA erred by determining Rapozo's minimum term sentence, when neither were the trier of fact; (13) the State erred by keeping Rapozo away from Hawai'i and his family for nearly forty years, preventing him from seeing his mother before her death, and distanced from those who could offer him the most support and assistance in a successful community re-entry; and (14) the circuit court erred by denying Rapozo a hearing when he alleged federal and state constitutional violations, and by failing to address his claims of illegal sentence under HRPP Rule 35 as incorporated by HRPP Rule 40.

sentence became final—that did not fall within either of the Teague exceptions.  Rapozo, mem. op. at 14.  The ICA ruled the circuit court therefore did not err by denying Rapozo's request for relief without a hearing.  Id.

The ICA also ruled Rapozo's argument that the "Hawaii Paroling Authority, by Order, has committed error in disallowing [Rapozo's] possibility of parole for non-payment of a fee, fine or restitution" was meritless and waived.  Rapozo, mem. op. at 15-16.  The ICA stated that notwithstanding the condition in the 1979 minimum term order, none of the eleven HPA parole decisions in the record referenced payment of restitution as a condition of parole.[33]  Rapozo, mem. op. at 15.  Moreover, the ICA ruled that argument had been waived, as it challenged an HPA parole decision; it did not implicate an illegal sentence; it was not raised in any of Rapozo's previous HRPP Rule 40 petitions; and Rapozo failed to show the existence of extraordinary circumstances justifying his failure to raise the issue previously.  Rapozo, mem. op. at 15-16.  Thus, the ICA concluded the circuit court did not err by denying Rapozo's request for relief without a hearing.  Rapozo, mem. op. at 16.

---

[33]   The ICA stated it could not consider the several documents attached to Rapozo's reply brief, which were not presented to the circuit court with his eighth HRPP Rule 40 petition.  Rapozo, mem. op. at 15 n.9 (citing Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(10)).

The ICA also ruled the 2010 and 2013 HPA parole denials were not based on Rapozo's failure to participate in the work furlough program, but rather, were "consistent with a continuing assessment by HPA that Rapozo is unable to 'substantially comply with the terms and conditions of parole[,]' but that his participation in work furlough programs would 'significantly enhance' his ability to 'substantially comply with the terms and conditions of parole.'"  Rapozo, mem. op. at 17.

As to Rapozo's first, third, fourth, sixth, and eighth through fourteenth points of error, the ICA concluded they were either meritless, waived, or raised for the first time on appeal.  See generally Rapozo, mem. op. at 12-20.

**3.  Supreme court proceedings**

On April 20, 2021, Rapozo filed a pro se certiorari application, which does not contain any arguments or questions presented.[34]

**III. Standards of review**

**A.  HRPP Rule 40 petitions**

> Review of orders denying HRPP Rule 40 petitions is de novo:

---

[34]    Rapozo also filed an April 20, 2021 single-sentence "Request for Appointment of Counsel."  On May 4, 2021, Rapozo filed a "Motion for Appointment of Counsel," asserting he has the constitutional right to have effective assistance of counsel throughout his criminal proceedings, and appears to ask for counsel to help him prepare a certiorari application.  As Rapozo stated colorable claims as discussed below, he must be appointed counsel on remand.

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court's proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

> Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (citation omitted).

Stanley v. State, 148 Hawai'i 489, 500, 479 P.3d 107, 118 (2021).

**B.  Sentencing**

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." State v. Reis, 115 Hawai'i 79, 83-84, 165 P.3d 980, 984-85 (2007) (cleaned up).

**IV.  Discussion**

**A.  General HRPP Rule 40 principles**

HRPP Rule 40, which governs post-conviction proceedings, provides in relevant part:

> **(a) Proceedings and Grounds. . . . :**

>> (1) From Judgment. At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

25

(i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i;

. . . .

(iii) that the sentence is illegal;

. . . .

(v) any ground which is a basis for collateral attack on the judgment.

. . . .

(2) From Custody. Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:

. . . .

(iii) any other ground making the custody, though not the judgment, illegal.

HRPP Rule 40(a)(3) governs waiver of issues in HRPP Rule 40 proceedings, and provides:

(3) Inapplicability. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

HRPP Rule 40(f), which governs hearings on HRPP Rule 40 petitions, states in relevant part:

(f) Hearings. If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

26

> The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

In turn, HRPP Rule 40(i) provides that indigent petitioners are entitled to representation by the public defender on their HRPP Rule 40 petitions if the petition is not "patently frivolous and without trace of support . . . ."

In sum, if an indigent petitioner raises a "colorable claim" in an HRPP Rule 40 petition, they are entitled to representation on the petition in an HRPP Rule 40(f) hearing. A "colorable claim" is one that is not "patently frivolous and without trace of support." With the foregoing principles in mind, we now turn to Rapozo's arguments.

**B. The circuit court erred by denying the eighth HRPP Rule 40 petition without a hearing because Rapozo stated colorable claims**

**1. Rapozo stated a colorable claim that the trial court erred by delegating the determination of the manner of payment of restitution to the DSSH**

We first address Rapozo's second point of error that the trial court erred by delegating the determination of the manner of payment of restitution to the DSSH. If this claim does not concern an illegal sentence, HRPP Rule 40(a)(3) bars relief, as Rapozo could previously have raised this issue.

As the ICA noted, in Johnson, this court held that "[w]ithout express legislative authority, the court cannot

27

delegate the sentencing function to another person or entity."[35]

Johnson, 68 Haw. at 297, 711 P.2d at 1299.  In Johnson, which

---

[35]    Rapozo cited to Gaylord.  In Gaylord, which was decided approximately fifteen years after Rapozo's conviction and sentence became final and approximately ten years after Johnson, this court stated:

> Although statutorily authorized by HRS § 706–605(1)(d), a sentencing court's discretion to order restitution is not boundless.  "Advocates of criminal restitution are convinced [that] it is not necessarily incompatible with the incarceration of offenders.  And we concur.  However, even the supporters of the concept acknowledge [that] its implementation is fraught with difficulty, primarily because incarceration normally entails a concomitant loss of earning capacity."  Murray, 63 Haw. at 24, 621 P.2d at 342 (citations omitted).
>     For this reason, among others, HRS § 706–605(1)(d) limits restitution orders to "an amount the defendant can afford to pay."  See State v. Johnson, 68 Haw. 292, 297, 711 P.2d 1295, 1299 (1985); Murray, 63 Haw. at 25, 621 P.2d at 343.  In this connection, and despite the fact that the sentencing court "may delegate to the Adult Probation Division the function of making recommendations . . . on the amount of restitution and the manner of payment, the court has the exclusive responsibility and function of imposing a sentence."  Johnson, 68 Haw. at 297, 711 P.2d at 1299.  Thus, "requisite specificity should be provided by the sentencing court and ought not be left to subsequent administrative determination," Murray, 63 Haw. at 25, 621 P.2d at 343 (citations omitted), because "[w]ithout express legislative authority, the court cannot delegate the sentencing function to another person or entity."  Johnson, 68 Haw. at 297, 711 P.2d at 1299.  Cf. United States v. Porter, 41 F.3d 68, 71 (2d Cir. 1994) (sentencing court cannot delegate to probation department, either as to amount or scheduling of installment payments, judicial functions inherent in grant of restitution); United States v. Weichert, 836 F.2d 769, 772 (2d Cir. 1988) (sentencing court may not authorize probation officer to make post-sentencing decision as to amount of restitution), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 802 (1989); United States v. Ahmad, 2 F.3d 245, 248–49 (7th Cir. 1993) (sentencing court may not authorize probation officer to make post-sentencing decision as to scheduling of installment payments).  Accordingly, "it is incumbent upon the [sentencing] court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which [the defendant] can afford."  Johnson, 68 Haw. at 297–98, 711 P.2d at 1299.
>
>     . . . .

(continued. . .)

was decided approximately five years after Rapozo's conviction and sentence became final, this court explicitly held that the trial court has the exclusive responsibility and function of imposing a sentence, and could not delegate its sentencing function to another entity without express legislative authority:

> Defendant contends that the trial court erred in failing to consider Defendant's ability to pay the restitution amount ordered by the court. Defendant argues that the trial court's order did not comport with the language, "in an amount . . . can afford to pay" in HRS § 706-605(1)(e) and HRS § 706-624(2)(i).
>
> Although the trial court may delegate to the Adult Probation Division the function of making recommendations to the court on the amount of restitution and the manner of payment, the court has the exclusive responsibility and function of imposing a sentence. Without express legislative authority, the court cannot delegate the sentencing function to another person or entity. "The requisite specificity should be provided by the sentencing court and ought not be left to subsequent administrative determination." State v. Murray, [63 Haw.] at 25, 621 P.2d at 343 (citations omitted).

---

(. . .continued)
> In addition, we hold that the sentencing court's restitution order failed to comply with HRS § 706-605(1)(d) and was illegally imposed. In disregard of Johnson, 68 Haw. at 297-98, 711 P.2d at 1299, the sentencing court failed to make any finding that $122,248.95 was an amount that Gaylord could afford to pay in restitution (indeed, as noted, the sentencing court viewed Gaylord's "sources of restitution" as "highly unlikely and highly speculative and unreliable") and to prescribe the manner of payment. To compound the error, in its December 13, 1991 judgment of conviction, the sentencing court expressly and improperly delegated the judicial function of determining the manner of payment to an administrative body—the Hawai'i Paroling Authority. Johnson, 68 Haw. at 297, 711 P.2d at 1299; Murray, 63 Haw. at 25, 621 P.2d at 343.

78 Hawai'i at 151-53, 155, 890 P.2d at 1191-93, 1195 (alterations and ellipsis in original) (footnote omitted).

29

68 Haw. at 297, 711 P.2d at 1299 (ellipsis in original) (footnotes omitted). Thus, the delegation was an illegal sentence. See Gaylord, 78 Hawai'i at 155, 890 P.2d at 1195 (holding the sentencing court's restitution order failed to comply with HRS § 706-605(1)(d) and Johnson and was "illegally imposed").

Although the delegation constituted an illegal sentence, because Johnson was decided after Rapozo's conviction and sentence became final, we must address whether its holding (that the trial court has the exclusive responsibility and function of determining the manner of payment and cannot delegate that judicial function to an administrative body without express legislative authority) (1) is a "new rule"; and, if so, (2) whether it retroactively applies to Rapozo's case. Thus, whether Johnson created a "new rule" is the preliminary inquiry.

### a. Retroactive application of new rules

Based on the reasoning that follows, we hold that Johnson did not create a "new rule." The ICA incorrectly applied the Teague framework to conclude that the Johnson rule did not retroactively apply to Rapozo's sentence. Teague is inapplicable to Johnson, as Johnson did not set out a "new rule."

"When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of

30

their own decisions." Schwartz v. State, 136 Hawaiʻi 258, 272, 361 P.3d 1161, 1175 (2015). "Although judicial decisions are assumed to apply retroactively, such application is not automatic," State v. Ikezawa, 75 Haw. 210, 220, 857 P.2d 593, 597 (1993), as "the Constitution neither prohibits nor requires retrospective effect." State v. Santiago, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971) (cleaned up). Thus, the threshold question is whether Johnson created a new rule.

There are four guiding principles in determining whether a "new rule" has been created. First, "[t]he prototypical manner in which this court creates a new rule is when it overrules a previous decision and announces a superseding principle of law." Schwartz, 136 Hawaiʻi at 272, 361 P.3d at 1175. Second, "[a]nother classic situation in which this court establishes a new rule is when it announces a new principle of constitutional law, such as one applying to criminal prosecutions." 136 Hawaiʻi at 273, 361 P.3d at 1176. However, "in instances where this court engages only in statutory construction to elucidate the meaning and application of specific provisions of a statute, we have held that a new rule does not arise." 136 Hawaiʻi at 274, 361 P.3d at 1177. Finally, a new rule is not created "where this court merely clarifies an existing legal principle . . . ." Id.

31

The holding in Johnson regarding the trial court's exclusive responsibility and function of determining the manner of payment of restitution, which cannot be delegated to an administrative body without express legislative authority, "merely clarifie[d] an existing legal principle . . . ." See id. Johnson actually clarified the legal principle this court set out in Murray: that "[t]he requisite specificity should be provided by the sentencing court and ought not be left to subsequent administrative determination." Murray, 63 Haw. at 25, 621 P.2d at 343.

Thus, the Johnson rule was based on Murray, which was decided approximately two months after Rapozo's conviction and sentence became final and approximately five years before Johnson. Murray was the first Hawai'i case to discuss HRS § 706-605 and the status and function of restitution in Hawai'i's criminal system. Murray "careful[ly] examin[ed]" the restitution statute, looking at the purpose, design, and policy of the statute, which authorizes a trial court to order a defendant to pay restitution in addition to imprisonment. See 63 Haw. at 17-19, 621 P.2d at 338-39. The Murray court then discussed the "statutory and constitutional constraints" of restitution orders, stating:

> The prescription of penalties is a legislative
> prerogative, State v. Freitas, 61 Haw. 262, 267, 602 P.2d
> 914, 919 (1979), but a sentencing court is nonetheless
> afforded wide latitude in the selection of penalties from

those prescribed and in the determination of their severity.  This authority is normally undisturbed on review in the absence of an apparent abuse of discretion, State v. Fry, 61 Haw. 226, 231, 602 P.2d 13, 17 (1979); State v. Martin, 56 Haw. 292, 294, 535 P.2d 127, 128 (1975), or unless applicable statutory and constitutional commands have not been observed.  The sentence here was subject to a legislative declaration that restitution should be in an amount the defendant "can afford to pay."  The record indicates the sentencing court itself acknowledged defendant's lack of capacity for actual compliance.  Thus, restitution could not have been in an amount defendant "can afford to pay."  Moreover, a restitution order patently beyond an offender's capacity for compliance serves no purpose, reparative or otherwise.  See Commonwealth v. Fuqua, 267 Pa.Super. 504, 508-509, 407 A.2d 24, 26 (1979); People v. Kay, 36 Cal.App.3d 759, 763, 111 Cal.Rptr. 894, 896 (1973).

    While we do not reach equal protection and due process, they may be considerations on resentencing.  The principles enunciated in cases like Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); and State v. Huggett, 55 Haw. 632, 638, 525 P.2d 1119, 1124 (1974), are often pertinent where a novel sentencing alternative is selected.  State v. Huggett, for example, teaches us that some degree of specificity is an essential element of a sentence.  A defendant must be apprised of "what is required of him, and when it is required, so that he will know when he is in default." State v. Calderilla, supra, 34 Or.App. at 1010, 580 P.2d at 579.  The requisite specificity should be provided by the sentencing court and ought not be left to subsequent administrative determination.  See, for example, Mason v. State, 46 Md. App. 1, 9, 415 A.2d 315, 319 (1980) and Kroenke v. State, 366 So.2d 46 (Fla.App. 1979).

63 Haw. at 25, 621 P.2d at 342-43.

As Johnson "merely clarfie[d]" the legal principle set forth in Murray, we must then actually address whether Murray created a "new rule," as Murray was decided approximately two months after Rapozo's conviction and sentence became final.  It is clear that Murray "engage[d] only in statutory construction to elucidate the meaning and application of specific provisions of a statute."  See Schwartz, 136 Hawai'i at 274, 361 P.3d at

33

1177.  Therefore, <u>Murray</u> did not create a "new rule."  <u>See</u>
<u>Rivers v. Roadway Exp., Inc.</u>, 511 U.S. 298, 312-13 (1994) ("A
judicial construction of a statute is an authoritative statement
of what the statute meant before as well as after the decision
of the case giving rise to that construction.").  As such,
<u>Johnson</u>, which relied on <u>Murray</u>, also did not create a "new
rule."

Further, HRPP Rule 40(a)(3) does not bar this claim.
Although Rapozo could have raised this claim in his previous
seven HRPP Rule 40 petitions or other proceedings, as explained
above, this is a claim of illegal sentence.  The trial court's
sentence that Rapozo pay "restitution in the amount of
$11,109.33, the manner of payment to be determined and handled
by the Department of Social Services and Housing" was illegal
because the trial court exceeded its authority by delegating the
manner of payment to the DSSH in sentencing Rapozo.

Thus, Rapozo's second point of error raised a colorable
claim and the circuit court erred by denying Rapozo's request
for relief without a hearing.[36]

---

[36]    To the extent Rapozo argued that the jury should have determined the
manner of payment of restitution, we conclude it is not a colorable claim.

34

2.     **Rapozo stated a colorable claim that the trial court erred by ordering him to pay restitution without first determining whether he could afford to pay it**

The ICA concluded it would not consider Rapozo's first and fourth points of error, that the trial court erred by ordering restitution without first determining whether he could afford to pay it, because it was raised for the first time on appeal. However, construing Rapozo's pleadings liberally, Rapozo raised the "afford to pay" issue in his motion for revocation of restitution, in which he argued:

> Two other issues remain regarding sentencing and restitution. One is, had it been legal for the sentencing court to impose restitution in this case, it cannot delegate the determination of the manner of payment of restitution to another person or entity. State v. Gaylord, 78 Haw. 127, 153, 155, 890 P.2d 1167, 1193, 1195 (1995). In Gaylord, the Hawaii Supreme Court stated that "it is incumbent upon the [sentencing court] to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which [the defendant] can afford." Id. at 153, 890 P.2d 1191. No determination was ever made in the instant case.

(Emphases added.) We therefore address this argument.

In Johnson, the trial court ordered restitution to be paid "in a manner to be determined by the Adult Probation Division." 68 Haw. at 297, 711 P.2d at 1299. This court held:

> We view the clause, "in a manner to be determined by the Adult Probation Division" to mean the manner of payment of the restitution amount. The manner of payment must be reasonable and one that Defendant can afford taking into account Defendant's financial circumstances. See State v. Garner, 115 Ariz. 579, 566 P.2d 1055 (1977); State v. Harris, [362 A.2d 32 (1976)].
>     The record indicates that Defendant was denied an opportunity to challenge the reasonableness of the Adult Probation Division's recommendation relative to the manner of payment of the restitution amount. This infringes on Defendant's right to due process as guaranteed under the Fourteenth Amendment, section 1 of the United States

35

> Constitution. See Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv.L.Rev. 931, 944 n. 92 (1984) (citing Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 785-86, 28 L.Ed.2d 113 (1971)).
> We hold that it is incumbent upon the trial court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which Defendant can afford. Here, the trial court failed to make such findings and conclusion.

Id.

Then, in Gaylord, this court stated,

> Presumably, the sentencing court's conceded "exclusive responsibility and function" derives from the statutory phrase, "in an amount the defendant can afford to pay," set forth in HRS § 706-605(1)(d). It seems intuitively obvious to us that a sentencing court cannot determine restitution "in an amount the defendant can afford to pay" without determining the manner of payment.

78 Hawai'i at 153 n.50, 890 P.2d at 1193 n.50.

As explained above, "in instances where this court engages only in statutory construction to elucidate the meaning and application of specific provisions of a statute, we have held that a new rule does not arise." Schwartz, 136 Hawai'i at 274, 361 P.3d at 1177. The Gaylord court interpreted the phrase "determining the manner of payment" in HRS § 706-605(1) to conclude that it included "in an amount the defendant can afford to pay." 78 Hawai'i at 153 n.50, 890 P.2d at 1193 n.50. This interpretation "was not a departure from precedent but, rather, confirmed the law as it existed" at the time of Rapozo's sentence and conviction. See Garcia, 125 Hawai'i 429, 443, 263 P.3d 709, 723 (2010).

36

Further, like with Rapozo's second point of error, HRPP Rule 40(a)(3) does not preclude this claim because this was a claim of illegal sentence because, as discussed above, the trial court improperly delegated the manner of repayment of restitution. Therefore, we hold Rapozo's first and fourth points of error stated a colorable claim that the trial court erred by failing to determine whether the restitution was in an amount he could afford to pay.

### 3. Rapozo stated a colorable claim that the HPA erred by denying parole for nonpayment of restitution

In his fifth point of error, Rapozo argued the HPA erred by "disallowing [Rapozo]'s possibility of parole for non-payment of a fee, fine, or restitution." The ICA concluded the circuit court did not err in ruling this argument meritless, as none of the HPA parole decisions in the record referenced payment of restitution as a condition of parole; and this argument was waived as it challenged an HPA parole decision and did not implicate an illegal sentence imposed by the circuit court, and Rapozo failed to prove extraordinary circumstances justifying his failure to raise the issue. For the reasons discussed below, we hold the ICA erred.

#### a. Rapozo stated a colorable claim that he was denied parole due to nonpayment of restitution

"Parole is a matter of legislative grace, and the denial of it to certain offenders is within legislative discretion."

37

<u>Williamson v. Hawai'i Paroling Authority</u>, 97 Hawai'i 183, 195, 35

P.3d 210, 222 (2001) (cleaned up).

> In granting or denying parole, the statutory standard to be applied by the HPA is that "[n]o parole shall be granted unless it appears to the [HPA] that there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society."

<u>Turner v. Hawaii Paroling Authority</u>, 93 Hawai'i 298, 302, 1 P.3d

768, 772 (App. 2000) (alterations in original) (quoting HRS §

353-65 (2015)).  Incarcerated people or parolees do not have a

right to parole.  Hawai'i Administrative Rules ("HAR") § 23-700-

37 (1992).

The HPA has the power to establish rules and regulations

"under which any prisoner may be paroled . . . ."  HRS § 353-65.

The HPA established such rules in HAR §§ 23-700-31 to -37.

Under HAR § 23-700-33, the HPA uses the following guidelines to

determine parole eligibility:[37]

> Parole shall not be granted unless it appears to the Authority that there is a reasonable probability that the inmate concerned will live and remain at liberty without violating the law and that the inmate's release is not incompatible with the welfare and safety of society. <u>Parole is not a right of an inmate or parolee</u>.  Parole may be denied to an inmate when the Authority finds:
>
> (a) The inmate does not have a viable parole plan;
> (b) The inmate has been a management or security problem in prison as evidenced by the inmate's misconduct record;
> (c) The inmate has refused to participate in recommended prison programs;

---

[37]   <u>See also</u> HRS § 706-670 (2014) (establishing parole terms for a person who is assessed as low risk for re-offending).

(d) The inmate's behavior in prison is a continuation of the behavior that led to the inmate's imprisonment;
(e) The inmate has a pending prison misconduct;
(f) The inmate does not have the ability or commitment to comply with conditions of parole;
(g) The inmate has pending criminal charges which arose from inmate's current incarceration or last parole;
(h) The inmate has a parole plan for a state that has not accepted the inmate for supervision; or
(i) The inmate has expressed little or no interest in parole.

(Emphases added.)

HRS § 353-64 (2015) states in relevant part:

[T]o be eligible for parole, the committed person, if the person is determined by the department to be suitable for participation, must have been a participant in an academic, vocational education, or prison industry program authorized by the department and must have been involved in or completed the program to the satisfaction of the department; and provided further that this precondition for parole shall not apply if the committed person is in a correctional facility where academic, vocational education, and prison industry programs or facilities are not available. A grant of parole shall not be subject to acceptance by the committed person.

(Emphasis added.)

HRS § 353-69 (2015) states:

Excepted as provided in section 706-670, no parole shall be granted unless it appears to the Hawaii paroling authority that there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society.

Whether to grant or deny parole is discretionary with the HPA. See State v. Keohokapu, 127 Hawai'i 91, 112, 276 P.3d 660, 681 (2012) ("Whether the defendant will ever be paroled is pure speculation since parole is dependent on circumstances in the future and is discretionary with the Hawai'i Paroling

Authority."). Although "[t]he legislature did not expressly provide a means to appeal HPA parole decisions," Williamson, 97 Hawai'i at 189, 35 P.3d at 216, an incarcerated person may still seek judicial review of the HPA's denial of parole through an HRPP Rule 40 petition. 97 Hawai'i at 194, 35 P.3d at 221 (citing Turner, 93 Hawai'i at 307-08, 1 P.3d at 777-78). "HRPP Rule 40(a) clearly indicates that the post-conviction proceeding under the rule was intended to 'encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis.'" State v. Kaluna, 106 Hawai'i 198, 204, 103 P.3d 358, 364 (2004). "The chief use of habeas corpus has been to seek the release of persons held in actual, physical custody." Id. (cleaned up) (quoting Turner, 93 Hawai'i at 307, 1 P.3d at 777). "[B]ecause a denial of parole continues physical custody, such denial is a proper subject of a writ of habeas corpus and, therefore, an inmate denied parole may be entitled to relief through the mechanism of a[n] HRPP Rule 40 petition." Turner, 93 Hawai'i at 307, 1 P.3d at 777. An incarcerated person seeking relief from an HPA decision to deny parole does so under HRPP Rule 40(a)(2) as they are in "custody based upon a judgment of conviction." See HRPP Rule 40(a)(2); Turner, 93 Hawai'i at 306, 1 P.3d at 776 ("It is plain that Appellant is in 'custody based on a judgment of conviction.'" (quoting HRPP Rule

40(a)(2)).  Therefore, HRPP Rule 40 petitions challenging an HPA decision to deny parole are subject to HRPP Rule 40(a)(3).

Here, under HRPP Rule 40(a)(3), Rapozo waived his challenges to the HPA parole denials from 2006 through 2011. Rapozo could have challenged these HPA parole denials in his previous seven HRPP Rule 40 petitions or other proceedings before his eighth HRPP Rule 40 petition, but he did not do so and he did not prove extraordinary circumstances justifying his failure to do so.[38]  Thus, we address only the 2012 and 2013 HPA parole denials.[39]

Hawai'i courts may review "a decision denying parole in situations where the parole board has failed to exercise any discretion at all, or arbitrarily and capriciously abused its discretion so as to give rise to a due process violation or has otherwise violated any constitutional rights of the prisoner." Williamson, 97 Hawai'i at 195, 35 P.3d at 222 (cleaned up) (quoting Turner, 93 Hawai'i at 308, 1 P.3d at 778).

The ICA concluded that notwithstanding the 1979 minimum term order that stated, "Parole shall not be granted until

---

[38]    The 2006 and 2007 HPA parole denials were raised and ruled upon in Rapozo's 2008 HRPP Rule 40 proceeding.

[39]    The 2012 and 2013 HPA parole denials were not waived by Rapozo in his eighth HRPP Rule 40 petition.  The HPA denied Rapozo's parole requests on August 28, 2012, and July 29, 2013, after Rapozo's January 10, 2012 seventh HRPP Rule 40 petition and before the June 9, 2014 eighth HRPP Rule 40 petition.

judg[]ment of restitution is satisfied," none of the eleven HPA parole decisions in the record referenced restitution payment as a condition of parole, and therefore the circuit court did not err by denying Rapozo's request for relief without a hearing.[40] We conclude otherwise.

The 2012 HPA parole decision stated parole was denied because the HPA was "not convinced that [Rapozo could] substantially comply with the terms and conditions of parole," and recommended "[t]hat [Rapozo] participate in all RAD recommended programs."  The HPA denied parole in 2013 as follows: "REASON FOR DENIAL:  Your participation in work furlough while incarcerated will significantly enhance your success on parole."

Yet, the 1979 HPA minimum term order expressly stated that "[p]arole shall not be granted until judg[]ment of restitution is satisfied."  Although Johnson asserted Rapozo's parole denials, including the 2012 and 2013 HPA parole denials, were not based on nonpayment of restitution, he was not a member of the three-member HPA that decides whether to grant parole. Therefore, despite Johnson's assertion that Rapozo's parole was not based on nonpayment of restitution, the record is unclear as

---

[40]    The ICA alluded to the HPA decisions to deny parole from 2014 to 2016. The 2014 though 2016 HPA parole denials, which were decided after the eighth HRPP Rule 40 petition, could not be raised, and were not raised, in the eighth HRPP Rule 40 petition.  Therefore, we decline to address those HPA parole decisions.

to whether the three HPA members considered the condition in the 1979 minimum term order in denying Rapozo's parole.  See Williamson, 97 Hawai'i at 194-95, 35 P.3d at 221-22 ("It would be impossible for a court to properly evaluate a parole denial because of the many variables considered by the board, such as record facts, personal observations and the experience of the decision maker which leads to a 'predictive judgment' as to what is best for both the inmate and the community." (cleaned up) (quoting Turner, 93 Hawai'i at 307-08, 1 P.3d at 777-78)). Therefore, Rapozo's claim that he was denied parole for nonpayment of restitution cannot be said to be "patently frivolous, and without a trace of support . . . ."  Rapozo raised a colorable claim that he was denied parole for nonpayment of restitution and the circuit court erred by denying Rapozo's request for relief without a hearing.

**4.  Rapozo stated a colorable claim that the HPA erred by denying him parole for failure to complete or participate in the work furlough program**

In his seventh point of error, Rapozo argued the HPA erred by denying him parole for failure to complete or participate in the work furlough program, when it was only available in Hawai'i and he had never been returned to Hawai'i to participate in the work furlough program.  As discussed, only the 2012 and 2013 HPA parole denials are properly before us; Rapozo's seventh point of error is therefore a challenge to the 2013 HPA parole denial.

43

HRS § 353-64 states:

> [T]o be eligible for parole, the committed person, if the person is determined by the department to be suitable for participation, must have been a participant in an academic, vocational education, or prison industry program authorized by the department and must have been involved in or completed the program to the satisfaction of the department . . . .

Thus, the HPA may properly deny an incarcerated person parole based on their failure to participate in or complete a "prison industry program," which appears to include work furlough programs.

Here, the 2013 HPA decision denied Rapozo's parole request, stating, "Your participation in work furlough while incarcerated will significantly enhance your success on parole." Rapozo argued he had never been able to participate in the work furlough program, which was located in Hawai'i, as he had never been returned to Hawai'i. According to Johnson's declaration, however, the HPA did not control when and which incarcerated people are transported from Arizona to Hawai'i to participate in the work furlough program, and the DPS was responsible for the work furlough program and transporting inmates.

Although the HPA recommended he participate in or complete the work furlough program, Rapozo was never given the opportunity to do so. It may be arbitrary and capricious to deny an incarcerated person parole for failure to participate in

a program while never giving them an opportunity to do so.[41]

Thus, Rapozo stated a colorable claim, and the circuit court

erred by denying this claim without a hearing.

### 5. Rapozo's remaining claims are meritless, raised for the first time on appeal, or waived

We agree with the ICA's reasoning that Rapozo's third,

tenth, eleventh, twelfth, and fourteenth points of error are

meritless.  As the ICA also concluded, Rapozo's ninth point of

error is deemed waived because his opening brief did not contain

an argument on this point.  See HRAP Rule 28(b)(7) ("Points not

argued may be deemed waived.").

---

[41]    In Regan v. Hawaii, Civ. No. 07-00029 JMS-BMK, 2007 WL 4440956 (D. Haw.
Dec. 19, 2007) (order), the petitioner moved for reconsideration of the
dismissal of four counts relating to his "right" to parole pursuant to HRS §
353-64, asserting he was unable to attend the programs needed to be eligible
for parole.  2007 WL 4440956, at *1-3.  The court denied the motion,
concluding:

> Plaintiff argues that because enrollment in some of
> the programs that were required for his parole were
> unavailable to him, he is eligible for parole without
> attending any of these programs.  He is mistaken.  First,
> simply because Plaintiff was unable to take part in these
> programs prior to his parole hearing does not make them
> "unavailable" at the prison.  Plaintiff may not have been
> eligible for these programs for various reasons (e.g., due
> to his custody or housing status), but they are, by
> Plaintiff's own submission, offered at the prison.  Second,
> and more importantly, as the court has already found,
> Plaintiff has no state-created liberty interest in parole.
> Thus, even if Plaintiff completed the programs that were
> required for parole, the Hawaii Paroling Authority may,
> nonetheless, deny him parole.

2007 WL 4440956, at *3 (footnote omitted).

    Regan is distinguishable.  Here, Rapozo did not argue he had a right to
parole; rather, Rapozo argued the HPA erred by denying him parole.

We do not consider Rapozo's sixth, eighth, and thirteenth points of error, which were raised for the first time on appeal. See Dan, 76 Hawaiʻi at 431, 879 P.2d at 536.

### V. Conclusion

For the reasons explained above, we vacate the ICA's April 5, 2021 judgment on appeal and the circuit court's June 21, 2016 order denying the eighth HRPP Rule 40 petition. We remand this case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Richard Rapozo<br>petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Brian R. Vincent<br>for respondent<br>Department of the<br>Prosecuting Attorney | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| Lisa M. Itomura<br>and Diane K. Taira<br>for respondent<br>Department of the<br>Attorney General | /s/ Todd W. Eddins |

